APAC–TENNESSEE, INC., Successor Corporation of Warren Brothers Company and O'Neal Paving Company, Plaintiff-Appellant and Cross-Appellee,

v.

J.M. HUMPHRIES CONSTRUCTION COMPANY, Defendant-Appellee and Cross-Appellant.

Court of Appeals of Tennessee, Western Section, at Jackson.

July 29, 1986.

Application for Permission to Appeal Denied Nov. 3, 1986.

Arnold Goldin, Lee J. Bloomfield, Memphis, for plaintiff-appellant and cross-appellee.

David Wade, Memphis, for defendant-appellee and cross-appellant.

CRAWFORD, Judge.

This case involves a dispute between a subcontractor and a contractor on a public improvement job. Plaintiff, APAC–Tennessee, Inc.,[1] filed its complaint against, among others, defendant, J.M. Humphries Construction Co., seeking, *inter alia*, contract retainage, interest on contract retainage and additional price adjustment payments for bituminous materials supplied for the project. Humphries' answer joined issue on the complaint's allegations and subsequently Humphries filed a counter-claim seeking a refund of the amount it had paid APAC because of an alleged book-keeping error.

This case was tried in two stages. The first stage was a trial before the court on the liability issues presented by the complaint and counter-complaint. The second stage was a hearing before the Master pursuant to the reference by the trial court after ruling on the liability issues.

The issues presented for review on this appeal concern primarily the first stage of the proceedings. The case was tried on a stipulation of evidence consisting of the following documents:

Exhibit 1 Proposal Contract between State of Tennessee and Humphries, dated March 29, 1978;

Exhibit 2 Tennessee Department of Highways, Standard Specifications for Road and Bridge Construction, which apply to Exhibit 1 and are a part thereof;

Exhibit 3 Subcontract between Humphries and O'Neal Paving Company ("O'Neal") dated April 5, 1978;

Exhibit 4 Transmittal letter dated May 25, 1978, and approved subcontract form between Humphries and O'Neal, dated May 25, 1978;

Exhibit 5 Subcontract between Humphries and Warren Brothers Company ("Warren Brothers") dated April 5, 1978; and

Exhibit 6 Transmittal letter dated May 25, 1978, and approved subcontract form between Humphries and Warren Brothers, dated May 24, 1978;

The prime contract between Humphries and the state was executed on or about March 29, 1978, and was for certain road improvements to Warford Street in Memphis consisting of grading, drainage, installation of bridges and guard rails and paving work. Humphries was obligated to provide the labor, materials and equipment as necessary to complete the project and as specifically listed in the contract as separate items. Included within the separate items listed were certain materials referred to as bituminous materials which were used in the asphalt paving portion of the contract. Regarding the bituminous materials, the contract had a provision entitled "Special Provision Regarding Price Adjustment For Bituminous Material" which was designated as Section 335. This special provision set forth a method to adjust the price to be paid by the state for the bituminous materials specifically listed and re-

---

1. APAC is the successor corporation of Warren Brothers Company and O'Neal Paving Company which were asphalt paving contractors doing business in this state. The two subcontracts that are subject to this litigation were entered into between Humphries and Warren and Humphries and O'Neal, respectively. However, APAC stands in the shoes of Warren and O'Neal and we will hereinafter refer to the subcontractors as APAC.

quired under the contract. Although the formula for the adjustment price was somewhat complicated, it basically provided for a price at the beginning of the contract and thereafter, if the actual price of the materials either increased or decreased more than five percent on a monthly basis, there would be an adjustment in the unit price paid by the state to the contractor for the bituminous materials covered by the contract provision.

By contracts dated April 5, 1978, Humphries subcontracted to Warren and to O'Neal the asphalt paving work to be performed under its contract. The subcontracts utilized the American Institute of Architects' standard form of agreement between contractor and subcontractor. We quote the parts of the subcontracts pertinent to the issues involved in this appeal:

## ARTICLE 1

### THE CONTRACT DOCUMENTS

The Contract Documents for this Subcontract consist of this Agreement and any Exhibits attached hereto, the Agreement between the Owner and Contractor dated March 29, 1978, the Conditions of the Contract between the Owner and Contractor (General, Supplementary and other Conditions), Drawings, Specifications, all Addenda issued prior to execution of the Agreement between the Owner and Contractor, and all Modifications issued subsequent thereto.

All of the above documents are a part of this Subcontract and shall be available for inspection by the Subcontractor upon his request.

The only Addenda and Modifications issued prior to the execution of this Subcontract and applicable to it are as follows:

## ARTICLE 2

### THE WORK

The Subcontractor shall furnish all materials, supplies, labor, equipment, engineering services and other necessary items to do and perform for Contractor the following items of work on the above mentioned project for the following contract prices ... [Here are listed the specific items as described in the prime contract and the specific sums to be paid to the subcontractors for the performance of the subcontract as to those items].

\* \* \* \* \* \*

## ARTICLE 4

### THE CONTRACT SUM

The Contractor shall pay the Subcontractor in current funds for the performance of the Work, subject to additions and deductions by Change Order, in accordance with the unit prices as set out in Article 2. It is understood and agreed that the quantities set out in said articles are estimates only and that the Contractor will pay the Subcontractor for all quantities actually produced by the Subcontractor and approved for payment by the State of Tennessee Department of Transportation.

## ARTICLE 5

### PROGRESS PAYMENTS

The Contractor shall pay the Subcontractor monthly progress payments ... [l]ess ten percent (10%) retained, within seven (7) days after receipt of monthly progress payment from owner.

\* \* \* \* \* \*

## ARTICLE 11

### SUBCONTRACTOR'S RESPONSIBILITIES

11.1 The Subcontractor shall be bound to the Contractor by the terms of this Agreement and of the Contract Documents between the Owner and Contractor, and shall assume toward the Contractor all the obligations and responsibilities which the Contractor, by those Documents, assumes toward the Owner, and shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, by those Documents, has against the Owner, insofar as applicable to this Subcontract, provided that where any provision of the

Contract Documents between the Owner and Contractor is inconsistent with any provision of this Agreement, this Agreement shall govern.

\* \* \* \* \* \*

## ARTICLE 12

### CONTRACTOR'S RESPONSIBILITIES

12.1 The Contractor shall be bound to the Subcontractor by the terms of this agreement and of the Contract Documents between the Owner and the Contractor and shall assume toward the Subcontractor all the obligations and responsibilities that the Owner, by those Documents, assumes toward the Contractor, and shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, by those Documents, has against the Contractor, insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between the Owner and the Contractor is inconsistent with any provision in this Agreement, this Agreement shall govern.

In the trial court APAC contended that the bituminous adjustment provisions of Section 335 of the prime contract was a part of the subcontracts involved herein and thus that Humphries was obligated to pay APAC any funds received from the state as a result of cost increases in bituminous materials. Although the stipulated evidence did not include any proof that the state paid Humphries an escalated price for asphalt material pursuant to the prime contract provision, it is conceded that at least an additional $29,744.26 was paid under this provision because Humphries is seeking this amount in its counterclaim alleging it was paid to APAC through error.

The trial court ruled that the bituminous material adjustment provisions of the prime contract were not incorporated into the subcontracts, that there was no obligation on the part of Humphries to pay any increases to APAC and that Humphries was entitled to a refund of $29,744.26, the amount paid in error. APAC presents the correctness of this ruling as its first issue for review.

Humphries asserts that the case comes to this Court with a presumption of correctness of the judgment pursuant to T.R.A.P. 13(d). This is not technically correct. T.R.A.P. 13(d) presumes the correctness of the findings of fact by the trial court. In the case before us, the trial court found no ambiguity in the contract and neither admitted nor relied upon extrinsic evidence in interpreting the contract. The interpretation of the written agreement is a matter of law and not of fact. *See Taylor v. Universal Tire, Inc.,* 672 S.W.2d 775 (Tenn. App.1984); *Forde v. Fisk University,* 661 S.W.2d 883 (Tenn.App.1983).

The cardinal rule for interpretation of a contract is to ascertain the intention of the parties in consideration of the instrument as a whole. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578 (Tenn.1975); *Rodgers v. Southern Newspapers, Inc.,* 214 Tenn. 335, 379 S.W.2d 797 (1964). In construing contracts, the words expressing the parties' intentions should be given their usual, natural and ordinary meaning and neither party is to be favored in their construction. *Brown v. Tennessee Auto. Ins. Co.,* 192 Tenn. 60, 237 S.W.2d 553 (1951); *Ballard v. North American Life & Casualty Co.,* 667 S.W.2d 79 (Tenn.App.1983).

In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may be thought harsh and unjust. *Ballard v. North American Life & Casualty Co., supra; E.O. Bailey & Co. v. Union Planters Title Guaranty Co.,* 33 Tenn.App. 439, 232 S.W.2d 309 (1949).

APAC contends that the bituminous material price adjustment provision is a part of the subcontracts and entitles it to the price increase for two reasons. First, APAC points to the general incorporation clause, Article 1 of the subcontracts, and asserts that the effect of this clause is to incorporate all provisions dealing in any way with the asphalt paving, including, but not limited thereto, the payment for the material and services performed under the contract. Humphries, on the other hand, asserts that the general incorporation

clause merely incorporates into the subcontracts the necessary plans and specifications for the performance of the subcontracts and in no way should be construed to include any provisions for payment.

Neither counsel cites, nor have we been able to find, any Tennessee authority precisely on point. Each party cites and relies upon cases from other jurisdictions dealing with incorporation clauses and whether a specific provision of the prime contract is incorporated by virtue thereof into the subcontract.

APAC cites *Sime Construction Co., Inc. v. Washington Public Power Supply System*, 28 Wash.App. 10, 621 P.2d 1299 (1980), which involved a general incorporation clause and the Court held that the notice procedure regarding damages for delay in the prime contract was incorporated by reference into the subcontract. In *Sonnier Electric Co. v. J.M. Brown Construction Co.*, 234 La. 540, 100 So.2d 499 (1958), a suspension of work clause was held to be included in the general incorporation clause so as to entitle the subcontractor to receive additional monies paid by the owner to the prime contractor. In *Frommeyer v. L. & R. Construction Co.*, 261 F.2d 879 (3d Cir.1958), the Court held that the incorporation clause included the "Changes & Extras" clause from the prime contract. The Court noted, however, that the clause of the subcontract incorporating the terms of the prime contract meant incorporation "insofar as applicable." In *Holbrook v. Fazio*, 84 Cal.App.2d 700, 191 P.2d 123 (1948), the Court held that a clause relating to method and time of payment was incorporated into the subcontract.

None of the cases cited by APAC deal with a general incorporation clause which incorporates a provision calling for a different amount of compensation to be paid.

Humphries cites and relies upon cases where the incorporation clause was held not to incorporate the particular provision into the subcontract. The general theme of the cases relied upon by Humphries is embodied in a statement in *McKinney*

*Drilling Co. v. Collins Co., Inc.*, 517 F.Supp. 320 (N.D.Ala.1981):

> Numerous cases have held that a subcontractor is free to contract in any manner that it desires; and if the specific provisions of the subcontract conflict with the plans and specifications, or with the general contract between the prime contractor and the owner (all of which are incorporated into the subcontract), the terms of the subcontract prevail. *E.g., John W. Johnson, Inc. v. Basic Construction Co.*, 429 F.2d 764 (D.C.Cir.1970); *Perry v. United States*, 146 F.2d 398 (5th Cir. 1945).

*Id.* at 327–28.

Humphries asserts that the pay provisions of the prime contract are entirely separate and distinct from the pay provisions of the subcontract and that it is never contemplated that the pay provisions will be included in the incorporation clause by implication.

APAC's second assertion as to why the bituminous material adjustment provision should be included is because of the "conduit" clauses of the subcontracts. Article 11.1 provides that APAC assumes all of Humphries' obligations relating to the asphalt work under the prime contract with the state and Article 12.1 provides that Humphries is bound to APAC by the terms of the subcontracts and assumes toward APAC all of the obligations and responsibilities that the state has to Humphries. APAC cites and relies upon *Industrial Indemnity Company v. Wick Construction Co.*, 680 P.2d 1100 (Alaska 1984), which involved contracts containing virtually the same "conduit" provisions. The prime contract contained a liquidated damages clause and the question was whether the liquidated damages clause was included in the subcontract by virtue of the conduit provisions. The Court held that the provision applied to the subcontract. We note, however, that the conduit provisions of the contracts before us specifically provide that the obligations, responsibilities, and the rights derived are assumed "insofar as applicable to this Subcontract, provided that where any provision of the Contract

Documents between the Owner and the Contractor is inconsistent with any provision in this Agreement, this Agreement shall govern."

■ In the case before us, the subcontracts are quite specific concerning the work to be performed by the subcontractors and the amounts to be paid therefor. The pay provisions of the subcontracts make no allowance whatsoever for pay increases or decreases due to material price changes or any other reason. It certainly seems plausible that different payment amounts could be provided for in a prime contract and in a subcontract. The subcontracts are quite explicit in listing the work and the amounts to be paid therefor and any provision calling for different amounts of pay would certainly be inconsistent with the provisions of the subcontracts. As noted, the subcontracts are quite clear that "where any provision of the Contract Documents between the Owner and the Contractor is inconsistent with any provision in this Agreement, this Agreement shall govern." Reading the contract documents as a whole, we must concur in the trial court's interpretation of the contracts concerning the bituminous materials provision.

■ APAC next presents for review the issue of whether the trial court erred in calculating the interest on the retainage due APAC only on the difference between the amount retained and the amount erroneously paid by Humphries to APAC instead of calculating the interest on the total amount of the retainage without reference to the amount erroneously paid by Humphries. APAC asserts that it is entitled to interest on the entire retainage without reference to any sums that Humphries might have erroneously paid. We disagree with this assertion. If interest is allowed on retainage, obviously it is because the payee is deprived of the use of his money. If the payee received part of this money he is not deprived of the use of it. In the case before us, APAC received money from Humphries, albeit erroneously

paid, and had the use of the money for the period of time for which it now claims it should be awarded interest. To award APAC interest on the entire amount of the retainage without taking into consideration the money paid to it by Humphries would be to allow APAC to receive double interest. The retainage, of course, means money retained and if it is paid it is not retained. Therefore, interest should not be allowed on the amount paid, if interest is due at all.

As noted, the trial court allowed interest on the retainage, although not as desired by APAC. Humphries asserts, however, that APAC is not entitled to *any* interest on the retainage and presents for review its issue of whether the trial court erred in allowing interest on the retainage.

The subcontracts before us provide for a 10 percent retainage and provide that the final payment due the subcontractor will be paid when the subcontract is fully completed and performed. The subcontracts further provide:

### ARTICLE 13

### INTEREST

Any monies not paid when due to either party under this subcontract shall bear interest at the legal rate in effect at the place of the project.

We find no provision whatsoever in the contract pertaining to interest on the retainage before the retainage is due to be paid.

APAC asserts that it is entitled to interest by virtue of T.C.A. § 12–4–108 (1980)[2] which we quote:

12–4–108. *Contractors—Withdrawal of retained funds.*—Under any construction contract entered into by the state of Tennessee, or any department or agency thereof, including the University of Tennessee, and including contracts entered into by the Tennessee bureau of highways pursuant to the authority contained

---

**2.** Although this statute was amended in 1983, the parties concede that the quoted statute is applicable here.

in § 54–513, or by any county, municipality or other political subdivision of said state, including a metropolitan government, the contractor may, from time to time, withdraw any part, or the whole, of the amount which has been retained from partial payments to the contractor pursuant to the terms of contract, upon depositing with or delivery to the treasurer of the state, or other appropriate public official designated in the contract document; (1) United States treasury bonds, United States treasury notes, United States treasury bills, or (2) general obligation bonds of the state of Tennessee, or (3) certificates of deposit from a state or national bank having its principal office in the state of Tennessee, or (4) a letter of credit from a state or national bank having its principal office in the state of Tennessee. No retained amount shall be withdrawn which would represent an amount in excess of the market value of the securities at the time of deposit or of the par value of such securities, whichever is lower, or in excess of the maximum amount committed and stated in the letter of credit.

At the time of deposit of any securities the same shall be endorsed, if necessary, and shall be accompanied by a conditional assignment to the state of Tennessee, or to the other public body designated as "owner" in the contract documents, which will empower the treasurer of the state, or other appropriate public official designated to have custody of same, to negotiate same at any time to the extent necessary to cause the contract to be fulfilled. At the time of the deposit of any letter of credit, the same shall be accompanied by an authorization by the contractor to deliver the retained funds to the issuing bank and a commitment from the issuing bank that the retained funds delivered to it shall be invested in one of the forms of securities enumerated hereinabove and delivered to the treasurer of the state or other appropriate public official in exchange for the letter of credit, said securities to be endorsed, if necessary, and accompanied by a conditional assignment to the state of Tennessee, or to the other public body designated as "owner" in the contract documents, which will empower the treasurer of the state, or other appropriate public official designated to have custody of same, to negotiate the same at any time to the extent necessary to cause the contract to be fulfilled.

The treasurer of the state, or other appropriate public official so designated, shall have the power to enter into a contract or agreement with any state or national bank having a trust department located in Tennessee for custodial care and servicing of any securities deposited with such official pursuant to this section. Such services shall consist of the safekeeping of said securities and of all services required to effectuate the purposes of this section.

So long as any securities remain on deposit, the treasurer of the state, or other appropriate public official shall, on a regular basis, collect all interest or income on the obligations so deposited and shall pay the same when and as collected, less any custodial care and servicing costs involved, to the contractor. The securities which remain on deposit at the time of completion of any contract and observance by the parties to the contract of any other statutory obligations relative thereto, shall be returned to the contractor. As used in this section, contractor includes the subcontractor.

There is no assertion, nor is there any proof that APAC complied with the provisions of T.C.A. § 12–4–108 and as we previously pointed out there is no provision in the subcontract providing for interest on the retainage. The subcontract provision is quite clear that interest is allowable only on sums not paid when due. Since the retainage was not due at the time of the filing of this suit, no interest was due thereon. Accordingly, the trial court's award of interest on the retainage was erroneous.

In summary, we reverse the judgment of the trial court awarding interest on the retainage and affirm the judgment of the trial court in all other respects. The case

is remanded for such further proceedings as are necessary. Costs are assessed against the appellant.

TOMLIN and HIGHERS, JJ., concur.