IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

FILED

February 12, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

ROBERT B. MARTIN,

     Plaintiff-Appellant,

Vs.

                                                       C.A. No. 02A01-9708-CV-00179
                                                       Shelby Law No.: 84079

UNION PLANTERS CORPORATION;
AND UNION PLANTERS NATIONAL
BANK,

     Defendants-Appellees.
_____

FROM THE CIRCUIT COURT OF SHELBY COUNTY
THE HONORABLE ROBERT A. LANIER, JUDGE

Jef Feibelman, Susan M. Clark; Burch, Porter & Johnson
of Memphis, For Appellant

J. Richard Buchignani, Ross Higman; Wyatt, Tarrant & Combs
of Memphis, For Appellees

*AFFIRMED AND REMANDED*

Opinion filed:

                                              **W. FRANK CRAWFORD,**
                                              **PRESIDING JUDGE, W.S.**

**CONCUR:**

**DAVID R. FARMER, JUDGE**

**HEWITT P. TOMLIN, JR., SENIOR JUDGE**

     This is basically a contract interpretation case. Although the complaint of plaintiff,

Robert D. Martin, against defendants, Union Planters National Bank (UPNB) and Union Planters

Corporation (UPC)[1], has other theories of recovery, the primary focus of the suit is for a declaration of rights and obligations under the contract between the parties and alternatively for plaintiff's recovery against the defendants on the theories of unjust enrichment or *quantum meruit.*

In response to the complaint, defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. Because the trial court considered matters outside the pleadings, the motion was treated as a summary judgment motion. On May 6, 1997, the trial court entered an order granting summary judgment to defendants, declaring that plaintiff forfeited his rights under the contracts in question, and dismissing plaintiff's action with prejudice. Plaintiff has appealed and presents two issues for review, as stated in his brief:

> 1. Whether the trial court erred in its interpretation of the parties' contracts that Martin has forfeited his rights to receive deferred compensation.

> 2. Whether the trial court erred in finding that the forfeiture provision of paragraph 10 is enforceable against Martin and denying Martin's recovery on the basis of unjust enrichment or *quantum meruit.*

The facts are undisputed. Martin, Chairman of the Board of Directors and Chief Executive Officer of Proffitts, Inc., became a member of the Boards of Directors of both defendants in December of 1985. As Director, Martin was offered the option of taking the customary director's fee or entering into a director's deferred compensation plan sponsored by each of the defendants. Under the plans, Martin could defer all or any portion of his annual director's fee in order to take advantage of pretax investment growth. The plan's purposes and objectives were explained to Martin in a document furnished by defendants titled, "Summary and Conclusion," which states in pertinent part as follows:

> The purpose of this program is to provide a more attractive means of compensation for those executives and directors who elect to defer their fees.

> The bank's net cost to adopt the plan is designed to be the same as paying current cash fees. This permits each executive or director to elect between current and future income.

---

[1]The original complaint named only UPNB as the defendant, and by subsequent amendment UPC was added as a party defendant. Plaintiff had contracts with both defendants, which, except for the defendants' names and the contractual amounts, were identical.

The cash value of each insurance policy is an unrestricted asset of the bank. The bank may borrow this cash value to generate income for the bank.

* * *

On December 31, 1985, Martin entered into a Director's Deferred Compensation Agreement with both UPNB and UPC and the two agreements provided that Martin would be paid a total of $1,404,820.00 in 120 equal monthly installments following his 65th birthday or his death, provided Martin served at least five years as a director. Each agreement recites that it is premised upon the bank's recognition of the faithful efforts of the directors, that the bank recognizes that the director's future services are vital to the bank's "continued growth and profitability," and that the bank desires to compensate the director and "retain his future services." The pertinent three paragraphs of the contracts which are involved in the dispute before the Court are as follows:

> 7. During the period of receipt of monthly installment payments from Union Planters, the Director shall not, directly or indirectly, enter into, or any manner take part in any business, profession or other endeavor, either as an employee, agent, independent contractor, advisor, consultant, owner or otherwise in the State of Tennessee, which, in the opinion of the Board of Directors of Union Planters, shall be in competition with the business of Union Planters. The opinion of the Board of Directors of Union Planters shall be conclusive for the purposes hereof.

> * * *

> 10. The Director shall forfeit all rights in and to any benefits payable under the terms of this Agreement if (a) the Director dies by suicide (whether sane or insane) within three years after the execution hereof, (b) if the Director fails to observe any of the terms of this Agreement and continues such observance failure for a period of 20 days after Union Planters shall have requested him to abide by the same, or (c) if the Director enters into any business described in paragraph 7 above; then, and in such event, no further payments shall be due or payable by Union Planters hereunder to the Director, his Beneficiary or estate, and Union Planters shall have no further liability hereunder.

> * * *

> 14. The Board of Directors of Union Planters may, in its discretion, establish a committee of three (3) of its members who are not parties to contracts similar to this Agreement and who shall be responsible for construing the terms hereof, making the determinations provided for herein. The Committee's construction and interruption [sic] of this Agreement shall be final and binding on the parties hereto.

3

Martin served on both defendants' Board of Directors from December, 1985, to April, 1994. In approximately October, 1994, Martin began serving as a director of First Tennessee National Corporation, and was serving on that board at the time of the hearing in this matter. Martin concedes that First Tennessee is Union Planters's chief competitor.

In March, 1996, Martin wrote a letter to Kirk Walters, Treasurer of UPC, to inquire about the agreements, in particular the beneficiary designation and the value of the benefits under the deferred compensation plans. Martin's attention to the agreements was precipitated at least in part by his receipt of a statement regarding an insurance policy purchased by UP. In response to Martin's inquiry, Walters informed Martin that he had received the insurance policy statement in error because as stated in the agreement the policy was owned by Union Planters. Walters also advised Martin that pursuant to the terms of the agreement, Martin had forfeited his right for deferred compensation under the agreements by becoming a director of First Tennessee.

Martin thereupon filed the present suit, and after so doing, a special committee of UPNB and UPC board members met on January 23, 1997, pursuant to Paragraph 14 of the agreement to consider whether Martin had forfeited his rights under the agreements by becoming a First Tennessee director. The committee determined that Martin had forfeited his rights and found, among other things, as follows:

> . . . this Committee is of the opinion that R. Brad Martin's present membership on the board of directors of First Tennessee National Corporation constitutes "enter[ing] into, or [in] any such manner tak[ing] part in any business, profession or other endeavor . . . which . . . shall be in competition with the business of" [Union Planters], within the meaning of that phrase in numbered paragraph 7 of the Agreement[s], which opinion, pursuant to numbered paragraphs 14 and 7 of the Agreement[s], shall be "conclusive" and "shall be final and binding on the parties hereto" in connection with the construing and interpreting the Agreement[s].

> NOW, THEREFORE, BE IT RESOLVED that this Committee has determined, pursuant to numbered paragraph 10 of the Agreement[s], that R. Brad Martin has "forfeit[ed] all rights in and to any benefits payable under the terms of" the Agreement[s]; and that pursuant to Paragraph 10(c) . . . "no further payments shall be due or payable" under the Agreement[s] by [Union Planters] to R. Brad Martin, his Beneficiary designated in the Agreement[s], or his estate; and that [Union Planters] "shall have no further liability" under the Agreement[s].

We will consider Martin's first issue: The trial court, in granting summary judgment to defendant, determined that there was no ambiguity in the contract, and that the express intention

4

of the parties is that if the "plaintiff goes into a business in competition with the defendant, he forfeits his rights under the contract, whether benefits have become payable or not." Martin asserts that the trial court erred because the operative provision of the contract is Paragraph 10, which specifically provides for forfeiture only when the Director "enters into any business described in Paragraph 7," and that the Director did not enter into any business. Martin argues that the provisions of Paragraph 10 limit the forfeiture provision to entering into any business, while the provisions of Paragraph 7 are much broader and include taking part in any business, profession, or endeavor as an advisor, consultant or otherwise, and that Martin could not be in violation of Paragraph 7 because that paragraph becomes operable only after the director begins drawing benefits.

We agree with the trial court's interpretation of the contract. The interpretation of a written agreement is a matter of law and not of fact. *APAC-Tennessee v. J. M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. App. 1986). The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117 (Tenn. App. 1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seems harsh or unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990).

We, like the trial court, do not find any repugnancy between the provisions of Paragraph 7 and Paragraph 10 of the agreement. Paragraph 7 specifically deals with the time period when the director is drawing benefits under the agreement and in and of itself does not contain a forfeiture provision. Paragraph 10, on the other hand, provides for forfeiture of benefits if its provisions are violated at any time during the existence of the agreement. Martin asserts that Paragraph 10 explicitly requires that for forfeiture to occur, the director must "enter into" a business, and that becoming a director of First Tennessee does not violate that provision. He argues that Paragraph 7, which includes a broader range of prohibited activities than Paragraph 10, indicates the intent that Paragraph 10 should be strictly construed to require forfeiture only

5

upon the actual active entry by the director in a competing business.

We must respectfully disagree. Paragraph 10 provides that the director shall forfeit if he "enters into any business described in Paragraph 7 above." Considering the document as a whole, we construe the incorporation provision of Paragraph 10 to prohibit the director from engaging in any activity, practice or pursuit as described in Paragraph 7. Paragraph 7 does not describe a "business" as an entity, but describes various activities the director is prohibited from engaging in. It appears that the use of the term "business" in Paragraph 10 is intended and does refer to the activities, practices and pursuits described in Paragraph 7. After all, the only "business" described is anything in competition with UP and certainly being a director of another bank fits that category.

We conclude, as did the trial court, that pursuant to the provisions of the agreements between Martin and the defendant, Martin's participation as a Director for First Tennessee is a violation of the agreements and he has thus forfeited his rights thereunder.

The second issue presented for review is whether the trial court erred in denying recovery on the basis of unjust enrichment or *quantum meruit.*

Martin asserts that the forfeiture of compensation due him for services as a director and deferred under the agreement is unjust and results in a windfall and unjust enrichment to UP. UP asserts that Martin made an election to receive compensation as a director pursuant to the terms of the contracts in question, and that he is bound by the provisions of the contract.

"Actions brought upon theories of unjust enrichment, quasi contracts, contracts implied in law, and *quantum meruit* are essentially the same. Courts frequently employ the various terminology interchangeably to describe that class of implied obligations where, on the basis of justice and equity, the law will impose a contractual relationship between the parties, regardless of their assent thereto." ***Paschall's, Inc. v. Dozier***, 219 Tenn. 45, 53-54, 407 S.W.2d 150, 154 (1966). *Quantum meruit* actions are equitable substitutes for contract claims and are based on a legally implied promise to pay a reasonable amount for goods or services received. ***John J. Heirigs Constr. Co. v. Exide***, 709 S.W.2d 604, 607 (Tenn. App. 1986). Quasi-contractual liability can be created where one person receives a benefit at the expense of another and it is unjust or inequitable for him to retain this benefit. ***Jaffe v. Bolton***, 817 S.W.2d 19, 26 (Tenn. App. 1991)(citing 7 Tenn. Juris. *Contracts* § 103 (1983)).

In the case at bar, Martin entered into an agreement with UP which specifically provided for forfeiture under certain circumstances. The services which Martin claims he should be paid for were rendered in the past, before there was any breach of the provisions of the contract. We believe that this case is controlled by the decision of our Supreme Court in ***Robinson v. Durabilt Mfg. Co.***, 195 Tenn. 452, 260 S.W.2d 174 (1953), where there was an action to recover on a *quantum meruit* basis for expenses incurred under the terms of an oral contract. In ***Robinson***, an agent entered into a contract with the manufacturer for the distribution of the manufacturer's product and expressly assumed the sale expense. The manufacturer had the right to terminate the contract at will, which he eventually did. The agent sued for sales expenses which enured to the benefit of the manufacturer. In holding that the agent was not entitled to recover on the basis of *quantum meruit*, the Court said:

> That is, where the nature of the benefit received by the employer is such that it cannot be abandoned by him upon his termination of a contract which he has a right to terminate, then he will not be required to pay for the receipt of such benefit.

***Robinson,*** 260 S.W.2d at 175.

The words of the Court in ***Jaffe v. Bolton***, 817 S.W.2d 19 (Tenn. App. 1991) are also appropriate for the instant case:

> Although the results in this case may be harsh, the "quasi-contractual principle of unjust enrichment does not apply to an agreement deliberately entered into by the parties, however harsh the provisions of such contract may seem in the light of subsequent happenings." 17 C.J.S. *Contracts* § 6 (1963).

*Jaffe*, 817 S.W.2d at 26.

The trial court correctly denied recovery to plaintiff. The order granting summary judgment is affirmed, and the case is remanded for such other proceedings as are necessary. Costs of the appeal are assessed against appellant.

We pretermit appellee's issue concerning the trial court's determination that the provisions of the agreements pertaining to dispute resolution is unconscionable.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

7

_____
**HEWITT P. TOMLIN, JR.**
**SENIOR JUDGE**