IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 27, 2009 Session

ERIC H. McPHERSON
v.
WILLIAM E. GEORGE, INC., AND
JOHN H. ROEBUCK & ASSOCIATES, INC.

An Appeal from the Chancery Court for Shelby County
No. CH-01-1788-2      Arnold B. Goldin, Chancellor

_____

No. W2008-02450-COA-R3-CV - Filed April 20, 2010

_____

This appeal involves the breach of a real estate contract. The plaintiff hired the defendant auctioneer to sell his home at auction. After the defendant corporate purchaser was the high bidder at the auction, it signed a sales contract and made a substantial down payment on the property. The down payment was retained by the auctioneer as his commission. Shortly after that, the auctioneer promised the purchaser that the purchaser's real estate agent would be paid a commission on the sale. Later, the defendant auctioneer refused to pay the purchaser's agent a commission and, consequently, the purchaser refused to close on the sale. The auctioneer retained the earnest money. The seller filed this lawsuit against the purchaser for failing to close on the sale, and against the auctioneer for breach of fiduciary duty. The purchaser filed a counterclaim against the seller and a cross-claim against the auctioneer for breach of contract. All of the parties filed cross motions for summary judgment. The trial court granted summary judgment in favor of the seller against the purchaser, but held in favor of the auctioneer against the seller. The trial court ordered the purchaser to pay damages to the seller for its breach of the sales agreement and permitted the auctioneer to retain the earnest money. The purchaser now appeals. We affirm, rejecting the purchaser's claim of fraudulent inducement, and concluding that the seller is entitled to damages pursuant to the plain language of the sales agreement.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Keith V. Moore, Memphis, Tennessee, for the appellant, William E. George, Inc.

James M. Simpson and Jessica A. Benton, Memphis, Tennessee, for the appellee, Eric H. McPherson

W. Timothy Hayes, Jr., Memphis, Tennessee, for the appellee, John H. Roebuck & Associates, Inc.

## OPINION

### FACTS

On July 3, 2000, Plaintiff/Appellee Eric H. McPherson ("Seller") hired real estate agency Defendant/Appellee John H. Roebuck & Associates, Inc. ("Roebuck"), to sell at auction his residence located at 1003 Island Park Circle in Memphis, Tennessee ("the property"). To this end, Seller and Roebuck executed an Absolute Real Estate Auction Contract ("auction contract") setting out the terms of Roebuck's representation of Seller.[1] The auction contract provided that Roebuck was "serving as Seller's agent to conduct the sale of Seller's property at the insistence of and for the benefit of the seller." Roebuck was obligated to promote, prepare, and facilitate the auction. In the contract, Seller agreed to pay Roebuck a "Ten Percent (10%) Buyer Premium to determine the contract sales price." The contract stated further that Roebuck "will receive an amount equal to the Ten Percent (10%) Buyer Premium as his total commission." In addition, pursuant to the contract, Seller paid Roebuck an auctioneer entry fee of $6,850 upon signing the auction contract.

The auction of the property occurred on August 29, 2000. Reverend William E. George ("Rev. George") made a successful bid of $230,000 for the property on behalf of his corporation, Defendant/Appellant William E. George, Inc. ("Buyer"). After the auction, Seller, Roebuck, and Buyer[2] entered into a three-party written agreement for the sale of the property ("sales agreement").[3] In the sales agreement, Buyer agreed to pay a 10% "Buyer Premium" of $23,000 in addition to the purchase price, which made the total contract price $253,000. Buyer paid the $23,000 Buyer Premium when the sales agreement was executed. The sales agreement stated that the Buyer Premium was "considered as part of commissions

---

[1]The contract was designated as a "Multi-Property" contract.

[2]Hereinafter in this Opinion, "Buyer" shall include both William E. George, Inc., and Rev. George, individually, unless otherwise specified.

[3]Rev. George made the bid at the auction; in the written sales agreement, the corporation was indicated as the purchaser.

earned by John Roebuck & Associates." The sales agreement stated that the parties anticipated that the closing on the sale of the property would occur on or before thirty days after the auction, or no later than September 29, 2000.

At some point after the gavel fell and Buyer became the prevailing bidder, Rev. George asked Mr. Roebuck whether his real estate agent would be paid a commission on the sale of the property. Buyer's agent happened to be Rev. George's wife, Mrs. Sundra George ("Mrs. George"), a long-time qualified real estate agent. Mr. Roebuck responded in the affirmative.[4]

On September 22, 2000, as Buyer prepared to close on the sale of the property, he reviewed the closing papers and realized that they did not reflect a commission due to Mrs. George. When Buyer inquired about this omission, Roebuck responded that it would not pay Mrs. George a real estate commission because she had not pre-registered as Buyer's agent.

Roebuck's refusal to pay Mrs. George a real estate commission was unacceptable to Buyer. Buyer noted that Mrs. George was not asked to sign any kind of agreement or paperwork prior to the auction and reminded Roebuck that Buyer had previously purchased property through Roebuck using Mrs. George as its agent; in no instance had Mrs. George been required to sign an agreement or complete any paperwork in order to be paid a commission.

On September 25, 2000, Buyer wrote Roebuck a letter canceling its purchase of the property based on Roebuck's failure to honor its promise to pay Mrs. George's real estate commission. The letter stated that, on September 22, 2000, Buyer attempted to close on the property, but it did not go through with the closing because the 20% commission that Mrs. George was promised was not included as part of the sale.[5] Therefore, Buyer said, Roebuck left it "no choice but to cancel the contract on the . . . property." Buyer requested that Roebuck immediately return Buyer's $23,000 earnest money payment.

In a response letter dated September 27, 2000, Mr. Roebuck acknowledged that Roebuck had promised to pay Buyer's agent's commission: "I [Mr. Roebuck] am aware I personally promised we would pay a commission to your agent, as you led me to believe or at least I assumed that your agent did indeed represent you and had followed our guidelines." Roebuck maintained, however, that the commission would not be paid because Mrs. George

---

[4]According to Mr. Roebuck, he told Rev. George that Mrs. George would be paid a commission only if she had pre-registered as an agent prior to the sale. Mr. Roebuck maintained that either Rev. George told Mr. Roebuck that Mrs. George had pre-registered as Buyer's agent, or Mr. Roebuck assumed that she had so pre-registered. Rev. George denied any discussion of such a condition.

[5]The amount listed in Buyer's September 25 letter is the first indication in the record of the amount of commission to which Buyer claimed Mrs. George was entitled.

had not pre-registered as Buyer's agent, as was required by Roebuck. Roebuck indicated in the letter that Buyer agreed to purchase the property before any promise of a commission to Buyer's real estate agent was made. Therefore, Roebuck said, Seller expected to close on the property, as Seller had "nothing to do with" any promise regarding commissions and was ready, willing, and able to close.

Although it maintained that Mrs. George was not entitled to a real estate commission, to facilitate the sale of the property, Roebuck subsequently offered to pay the disputed real estate commission to Mrs. George. On October 13, 2000, Seller sent Buyer a letter confirming that Roebuck had offered to pay the real estate commission, and stating that he was willing to sell the Buyer the property on the original terms, plus interest, taxes, and homeowner's association dues that had accrued since the original sales contract expired. On October 17, 2000, Seller's attorney sent Buyer another letter, again confirming the offer. The letter noted that, because the original closing did not occur within thirty days, the original sales agreement was no longer binding on Seller, but stated that nevertheless Seller was "willing to negotiate a new contract on the same terms as the old contract with the sole exception that you pay [$84.58 in] interest, homeowners' association dues, and taxes . . . ." The letter from Seller' attorney asked Buyer to notify him as soon as possible "[i]f you and [Seller] are able to renegotiate a contract."

By letter dated October 18, 2000, Buyer rejected the offer to renegotiate a new sales agreement.[6] Buyer asserted that Seller had "canceled the Real Estate contract dated August 29, 2000," and requested "that [Roebuck] immediately return my earnest money deposit in the amount of $23,000." Roebuck did not return the earnest money deposit.

### PROCEEDINGS BELOW

On August 28, 2001, Seller filed the instant lawsuit against Buyer, asserting breach of contract for Buyer's failure to close on the sale of the property within thirty days of the execution of the sales agreement.[7] Seller also named Roebuck as a defendant, asserting that Roebuck's failure to pay the real estate commission to Mrs. George as Buyer's agent, as it had promised to do, constituted a breach of Roebuck's fiduciary duty to Seller. Seller alleged that, by engaging in a dispute with Buyer over the commissions due, "Roebuck placed its own interest in the Buyer's Premium above its duty to Seller." Seller sought a

---

[6]Some evidence in the record indicated that Buyer's failure to close was due in part to this impasse and also due in part to the fact that Buyer could not obtain financing.

[7]In the original complaint, Seller named both William E. George in his individual capacity and William E. George, Inc., as defendants in this action. Later, William E. George individually was dismissed from the lawsuit, and this dismissal is not challenged on appeal.

-4-

constructive trust over the $23,000 in earnest money held by Roebuck, and argued further that he was entitled to special damages based on both defendants' conduct.

Buyer filed an answer denying liability to Seller for breach of contract. Buyer also filed a counterclaim against Seller and a cross-claim against Roebuck. Buyer asserted that the earnest money provisions in the sales agreement drafted by Roebuck were unenforceable under Tennessee law, because those provisions allowed for both the forfeiture of the earnest money and also for additional contract damages. In its counterclaim, Buyer also asserted that Seller breached the sales agreement "by announcing that he would no longer be bound by . . . said contract."[8] Buyer requested that relief be denied to Seller and that it be awarded the $23,000 in earnest money retained by Roebuck.

Roebuck filed an answer as well, denying that it breached the contract and alleging that the sole cause of Seller's damages was his own failure to close on the sale of the property. Roebuck admitted that it refused to pay a sales commission to Mrs. George, stating that it refused to do so because "she was not pre-registered as per [Roebuck's] requirements." Roebuck denied breaching any fiduciary duty to Seller and denied that Seller was entitled to a constructive trust over the $23,000 that was retained by Roebuck.

After several years of inactivity in the case, all of the parties filed cross motions for summary judgment. On August 19, 2005, Seller filed a motion for summary judgment, arguing that the undisputed facts showed that Buyer was in breach of the sales agreement by refusing to close on the sale, and that Roebuck was also responsible for the breach because it "wrongfully refused to pay the commission [to Mrs. George] as promised and subsequently retain[ed] the commission for itself, preventing the close of the sale."

On September 30, 2005, Roebuck filed a motion for summary judgment as to Seller's complaint, claiming that, on the undisputed facts, it did not breach the sales agreement, did not cause the breach of the agreement, did not interfere with the agreement, and did not breach any fiduciary duty to Seller. In support of its motion, Roebuck submitted the affidavit of Mr. Roebuck and copies of the pertinent contracts and correspondence among the parties.

On February 6, 2007, Roebuck filed its answer to Buyer's cross-claim. Roebuck denied that the sales agreement was unenforceable under Tennessee law, and denied that efforts to enforce a forfeiture of earnest money is disfavored. On the same date, Roebuck filed a supplemental response to Seller's motion for summary judgment. In the supplemental response, Roebuck claimed that the sales agreement among Seller, Roebuck, and Buyer was

---

[8]Buyer further stated that, because Seller abandoned the agreement, "John Roebuck and Associates, Inc., must look to Eric H. McPherson for any compensation and not from William Euby George, Inc." Given that Mr. McPherson is the party seeking compensation, this assertion is possibly a typographical error.

complete when Buyer became the high bidder at the auction, at the moment the auctioneer's gavel fell. Therefore, Roebuck asserted, the subsequent dealings between Roebuck and Buyer regarding a commission due to Mrs. George were separate from the sales agreement and did not involve Seller. Furthermore, Roebuck argued, no contract was formed between Roebuck and Buyer for the payment of a broker's commission to Mrs. George. Even if a contract had been created, Roebuck claimed, Buyer failed to comply with the conditions of the contract. In addition, Roebuck asserted that Buyer's failure to close on the property was due to its inability to obtain financing, not Roebuck's refusal to pay a real estate commission to Mrs. George. Therefore, Roebuck maintained, Roebuck did not breach any fiduciary duty to Seller, and its actions did not cause Buyer to breach the sales agreement.

On March 29, 2007, Buyer filed a motion for summary judgment. Buyer first argued that, under the language of the sales agreement, Seller was not permitted to both cancel the contract and keep the earnest money, and at the same time elect to affirm the contract and seek damages for breach of contract. It further argued that the $23,000 in earnest money should be returned to Buyer because forfeitures are not favored in Tennessee and should not be enforced. Alternatively, Buyer argued that Seller's damages should be only the special damages that arose out of his breach of contract, and that those damages should be limited to the earnest money that was retained by Roebuck.

On April 3, 2007, the trial court heard arguments on Seller's motion for summary judgment as to both Buyer and Roebuck, and also on Roebuck's motion for summary judgment as to Seller.[9] About a month later, on May 4, 2007, the trial court entered an order granting Seller's motion for summary judgment as against Buyer, but denying Seller's summary judgment motion as to its claims against Roebuck. The trial court held that Buyer breached the sales agreement by refusing to close, but that "Roebuck did not breach, cause the breach of or interfere in any way with the [sales agreement]." The trial court further held: "An agreement, if any, to pay a real estate agent's commission to the agent of [Buyer] by Roebuck was separate and apart from the [sales agreement] and cannot and does not serve as a legally justifiable excuse for [Buyer's] breach of the [sales agreement]." In addition, the trial court granted Roebuck's motion for summary judgment against Seller, specifically holding that Roebuck fulfilled its fiduciary duty to Seller "by doing what it was legally obligated to do." The trial court expressly found that genuine issues of material fact existed "as to whether or not Roebuck and [Buyer] entered into a contract for the payment of a real estate agent's commission to [Mrs. George]."

On May 4, 2007, the same date as the trial court's order on the summary judgment motions, Roebuck filed a motion for summary judgment as to Buyer's cross-claim. In its motion, Roebuck asserted that the sales agreement specifically provided that Roebuck was entitled

_____

[9]The trial court expressly stated that it was not, at that juncture, addressing Buyer's motion for summary judgment.

to retain the Buyer Premium upon Buyer's breach. Roebuck maintained that the sales agreement was valid and enforceable, that it was not ambiguous, and that pursuant to its terms Roebuck was entitled to retain the $23,000 in earnest money based on Buyer's breach of the sales agreement.

On August 7, 2008, the trial court heard arguments on Roebuck's motion for summary judgment against Buyer. On August 21, 2008, the trial court entered an order granting the motion, stating simply that Roebuck's summary judgment motion was "well taken and should be granted."

On September 16, 2008, the trial court conducted a Writ of Inquiry hearing regarding the amount of Seller's damages. At the hearing, Seller testified that the damages he incurred between the time that the original sales contract expired and the date on which he sold the residence six months later totaled $44,595.61. This amount included $15,922.66 in attorney's fees for which Seller had been billed as of the date of the hearing. At the conclusion of the hearing, the trial court awarded Seller a judgment against Buyer in the amount of $44,166.43, essentially the total recovery sought by Seller.[10]

On February 2, 2009, the trial court entered an amended final order clarifying that, in addition to granting Roebuck's motion for summary judgment against Buyer in its August 21, 2008 order, it also denied Buyer's motion for summary judgment against Roebuck. The trial court further clarified that Roebuck was entitled to retain the $23,000 in earnest money paid by Buyer pursuant to the sales agreement. On February 16, 2009, the trial court entered an additional order clarifying that all of the parties' remaining claims that had not yet been adjudicated were denied.[11] Buyer now appeals.[12]

---

[10]It is unclear why the trial court awarded Seller $429.18 less than requested at the hearing. This difference is not raised as an issue on appeal.

[11]The trial court's order used only the word "denied." Considering the overall proceedings and context, we interpret the language in the order as a specific denial of Buyer's motion for summary judgment against Seller, and also as a final dismissal of Buyer's counterclaim against Seller and its cross-claim against Roebuck.

[12]Buyer's notice of appeal was filed prematurely on October 28, 2008. We deem it to have been timely filed. *See* Tenn. R. App. P. 4(d).

## ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Buyer argues that the trial court erred in granting Seller's motion for summary judgment and in awarding him damages for Buyer's breach of the sales agreement. Buyer also argues that the trial court erred in granting Roebuck's motion for summary judgment and permitting it to retain the earnest money paid under the sales agreement. Buyer first claims that Roebuck's failure to pay Mrs. George's real estate commission as promised constituted a material misrepresentation designed to fraudulently induce Buyer into placing a bid on the subject property. Because of Roebuck's misrepresentation, Buyer argues, Buyer's failure to close under the sales agreement was justified and did not constitute a breach of that agreement. Furthermore, Buyer contends, the trial court should rescind the sales agreement and place the parties in their pre-contractual positions, thus requiring Roebuck to return the earnest money to Buyer. Buyer also argues that Roebuck's misdeeds are chargeable against Seller, because Roebuck at all times was acting in its capacity as the Seller's agent. Therefore, Buyer argues, neither Seller nor Roebuck should be able to profit from Roebuck's perfidious refusal to pay Mrs. George's real estate commission as promised. In the alternative, Buyer contends, even if it breached the sales agreement, the trial court improperly construed the sales agreement so as to allow Seller to both cancel and affirm the agreement. Any ambiguities in the contract on this issue, Buyer claims, should be resolved against the drafters of the agreement, namely, Seller and Roebuck.

We review the grant of summary judgment *de novo* on the record, with no deference afforded to the trial court's decision. *U.T. Med. Group, Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007). Summary judgment may be granted when no genuine issue of material fact exists, and the moving party is entitled to a judgment as a matter of law. *See Hannan v. Alltel Pub'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); Tenn. R. Civ. P. 56.04. If the moving party makes a properly supported motion for summary judgment, the burden shifts to the non-moving party to show the existence of a disputed issue of material fact for trial. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Hannan*, 270 S.W.3d at 9. A mere scintilla of evidence in support of a non-party's position is insufficient to defeat an otherwise proper motion for summary judgment. *Byrd*, 847 S.W.2d at 212.

## ANALYSIS

### *Fraudulent Inducement*

We first address Buyer's argument that Roebuck fraudulently induced it to bid on the subject property by promising to pay Mrs. George a real estate commission. Subsumed within this argument is Buyer's position that any misrepresentations made by Roebuck are attributable to Seller, because Roebuck at all times was acting as Seller's agent. Therefore, both

Roebuck and Seller, through Roebuck, made false representations regarding their intent to pay a commission to Mrs. George, and those false representations in turn induced Buyer to bid on the subject property. Therefore, the trial court should have rescinded the sales agreement and ordered Roebuck and Seller to return the $23,000 in earnest money paid by Buyer.

In support of its arguments, Buyer cites *Biancheri v. Johnson*, Nos. M2008-00599-COA-R3-CV & M2007-02861-COA-R3-CV, 2009 WL 723540 (Tenn. Ct. App. Mar. 18, 2009). In *Biancheri*, the appellate court explained that a claim of fraudulent inducement requires a plaintiff to show that (1) the defendant made a representation of an existing or past fact; (2) the representation was false when it was made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damages as a result of the misrepresentation. *Biancheri*, 2009 WL 723540, at *7.

We are compelled to note that Buyer did not expressly assert in the trial court, either as a separate claim for relief or as an affirmative defense, that it was fraudulently induced into bidding on the property or into signing the sales agreement. Rather, it simply asserted that Roebuck's failure to abide by its promise to pay Mrs. George a commission justified its failure to close on the sale of the property.

Moreover, Buyer did not set out in its pleadings the elements of fraudulent inducement listed in *Biancheri*. At no time did Buyer allege that Roebuck made the promise to pay the real estate commission with no present intent to perform, or that Buyer relied on Roebuck's promise prior to bidding on the subject property. Furthermore, Buyer did not include the affirmative defense of "fraud" in his amended answer to Seller's petition. *See* Tenn. R. Civ. P. 8.03; 12.08. Therefore, because Buyer did not argue in the trial court that either Roebuck or Seller fraudulently induced Buyer's execution of the sales agreement, Buyer cannot avail itself of this argument on appeal. *See Rawlings v. The John Hancock Mut. Live Ins. Co.*, 78 S.W.3d 291, 300 (Tenn. Ct. App. 2001).

Nevertheless, even if this argument had been preserved for appeal, the undisputed facts in this case would not support a finding of fraudulent inducement. Both Roebuck and Seller assert on appeal that Roebuck's promise to pay Mrs. George a real estate commission was made *after* Buyer submitted a bid and became the high bidder on the property at the auction, and Buyer reluctantly concedes that this fact is undisputed.[13] Because Roebuck's promise was made after Buyer had agreed to purchase the property, Buyer could not have relied on

---

[13]At oral argument, counsel for Buyer acknowledged that, although the "actual minute" the promise was made is unclear in the record, it is undisputed that the promise was made after the auctioneer's gavel fell.

that promise in making its decision to purchase the property. ***See Biancheri***, 2009 WL 723540, at *9 (finding a viable claim for fraudulent inducement when the misrepresentations were made before the buyers agreed to purchase the property). The trial court found that the sales agreement was formed before any further promise was made by Roebuck, so the sales agreement was separate and apart from any promise to pay Mrs. George a real estate commission. We agree. Consequently, even if Buyer's argument based on fraudulent inducement had been preserved for appeal, it would be rejected on its merits.[14]

On appeal, Buyer raises no other challenges to the trial court's finding that Buyer breached the sales agreement by failing to close on the property before the thirty-day contractual time period. Indeed, the undisputed evidence in the record shows that Seller was ready, able, and willing to close on the property before the deadline, but that Buyer refused to do so. Based on these undisputed facts, we affirm the trial court's finding that Buyer breached the sales agreement.

### *Damages*

In the alternative, in the event of a finding that Buyer breached the sales agreement, Buyer argues that the trial court erred in permitting Seller to both cancel and affirm the sales agreement, effectively "recover[ing] both ways" under that agreement. Acknowledging that Roebuck, not Seller, was entitled to retain the earnest money when the agreement was canceled, Buyer asserts that this recovery should be nevertheless attributed to Seller who "voluntarily agreed to have the earnest money turned over to [Roebuck]." Consequently, Buyer asserts that the language in the sales agreement should not be interpreted to permit Seller to recover for both canceling and affirming the agreement.

The sales agreement includes the following language:

> RECEIVED of the undersigned Purchaser the sum of $23,000, deposit, as Earnest Money for the purchase of the following described real estate. These funds shall be considered as a part of commissions earned by John Roebuck & Associates.
> ...
> If the Purchaser shall fail to pay for the property as specified herein, Seller shall have the right to declare the contract canceled, and upon such election, the Deposit Money shall be retained by John Roebuck & Associates, Inc., as commission. However, the right given Seller to make this election shall not

---

[14]Because Buyer's fraudulent inducement claim is without merit, we must also reject Buyer's claim that Roebuck's fraudulent acts are attributable to Seller, and that the sales agreement must be rescinded on this basis.

be Seller's exclusive remedy and [S]eller shall have the right to elect to affirm this contract and enforce its specific performance or recover full damages for its breach and the purchaser will be responsible for any and all legal fees incurred. Retention of Deposit Money shall not be evidence of an election to declare this contract canceled.

Thus, the sales agreement expressly provides that, if the purchaser fails to pay under the agreement, as in the instant case, Roebuck is permitted to retain the earnest money paid, and this is not deemed to be Seller's exclusive remedy. Rather, Seller is also permitted to "elect to affirm this contract and enforce its specific performance or recover full damages for its breach and the purchaser will be responsible for any and all legal fees incurred." The contract provision states further that Roebuck's retention of the earnest money "shall not be evidence of [Seller's] election to declare this contract canceled."

Buyer argues that this contract provision is ambiguous because, although it uses the term "election," the provision in effect allows Seller to make an "election" to both cancel and affirm the agreement. Seller claims that, "in order to have an election, one must choose between two or more matters, . . . you can't choose to both cancel and affirm a contract." Because the provision is ambiguous, Buyer maintains, the contract must be construed against the drafters, Roebuck and Seller, and in favor of Buyer. Thus, Buyer argues, the contract should be construed to permit Seller to choose either to cancel the contract and retain the earnest money (or allow Roebuck to retain it), or to affirm the contract and seek specific performance or damages for breach.

The interpretation of a written contract is an issue of law. *APAC-Tennessee, Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. Ct. App. 1986). "The cardinal rule for interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703-04 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975)). If the language of the contract is clear and unambiguous, then its literal meaning should control the outcome of the dispute, and "the language used is taken in its 'plain, ordinary, and popular sense.' " *Id.* at 704 (quoting *Bob Pearsall Motors*, 521 S.W.2d at 580). If, on the other hand, a contract is susceptible to more than one interpretation, it is ambiguous and must be construed according to normal contract principles. *Id.* An ambiguity does not arise simply because the parties may disagree as to the proper interpretation of a contract. Rather, "[a] contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one . . . [and] [t]he court will not use a strained construction of the language to find an ambiguity where none exists." *Id.* (citations omitted).

In the instant case, the damages provision in the sales agreement is not subject to more than one interpretation and, therefore, is not ambiguous. The provision quoted above plainly permits Seller to declare the contract canceled in the event of a purchaser's failure to pay, and at the same time it permits Roebuck to retain the earnest money while Seller affirms the contract and seeks specific performance or contractual damages from Buyer. The agreement specifically states that Seller's election to treat the contract as canceled and permit Roebuck to keep the earnest money is not Seller's exclusive remedy. This sales agreement was freely entered into among Seller, Roebuck, and Buyer, and it provides specifically for the type of damages allowable to each party in the event of Buyer's breach. This Court must enforce the plain terms of the contract as written, even if doing so leads to a result that seems harsh or unjust. *See Home Beneficial Ass'n v. White*, 177 S.W.2d 545, 546 (Tenn. 1944); *Ballard v. N. Am. Life & Cas. Co.*, 667 S.W.2d 79, 82 (Tenn. Ct. App. 1983). Buyer has cited no authority suggesting that this provision is otherwise unenforceable. Therefore, we find that the plain language of the contract permits the recovery awarded by the trial court, and, accordingly, affirm the trial court's damage award to Seller.[15]

### Roebuck's Breach of Fiduciary Duty to Seller

As noted above, the trial court granted Roebuck's motion for summary judgment against Seller, finding specifically that "Roebuck met its fiduciary duty to [Seller] by doing what it was legally obligated to do . . . . [Buyer] breached the Real Estate Sales Contract by failing to close." On appeal, Seller argues that the trial court erred in summarily dismissing Seller's claims that Roebuck breached its fiduciary duty to Seller by reneging on its promise to pay a real estate commission to Mrs. George, which in turn resulted in Buyer's breach of the sales agreement. Seller asserts that a real estate agent such as Roebuck owes a duty of loyalty to its client, and that this includes a duty to refrain from taking action that would prejudice the client's interests in favor of the agent's own interests. *See Weaver v. McCarter*, No. W2004-02803-COA-R3-CV, 2006 WL 1529506, at *9 (Tenn. Ct. App. June 6, 2006); *Youngblood v. Wall*, 815 S.W.2d 512, 516 (Tenn. Ct. App. 1991).

We have determined that any misrepresentations about the real estate commission by Roebuck did not induce Buyer to enter into the sales agreement and were separate from the sales agreement, and that Buyer breached the sales agreement by refusing to close on the sale of the property. Because Seller's damages were caused by Buyer's breach of the sales agreement, we find that the issue of whether Roebuck breached its fiduciary duty to Seller is pretermitted.

### Attorney's Fees

---

[15]On appeal Buyer does not challenge the amount of the damage award recovered by Seller.

Seller argues on appeal that the trial court erred in not awarding Seller its attorney's fees incurred after the September 16, 2008 Writ of Inquiry hearing. The sales agreement provides that, upon the purchaser's breach, "the purchaser will be responsible for any and all legal fees incurred." The appellate record does not indicate whether any such supplemental fees were requested of the trial court, or whether any such fees were incurred. The plain language of the sales agreement appears to permit Seller to recover for legal fees incurred in its pursuit of damages based on Buyer's breach of contract. Therefore, we must remand this case to the trial court to determine whether Seller is entitled to any additional attorney's fees incurred after the September 16, 2008 hearing.

## CONCLUSION

The decision of the trial court is affirmed, and the cause is remanded for reconsideration of Seller's attorney's fee award. Costs on appeal are to be taxed to Appellant William E. George, Inc., and its surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE