**HILLSBORO PLAZA ENTERPRISES,** Hillsboro Plaza Associates, and William R. Weakley, Plaintiffs/Appellants,

v.

**Thomas W. MOON, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Feb. 24, 1993.

Permission to Appeal Denied by Supreme Court June 28, 1993.

David S. Zinn, Michael D. Dillon, Zinn and Associates, Nashville, for plaintiffs/appellants.

Harlan Dodson, III, Dodson, Parker & Behm, Nashville, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a dispute between a shopping center operator and one of its former neighbors concerning the neighbor's continuing liability under a long-term agreement permitting its customers and employees to use the shopping center's parking. The shopping center sued the neighbor in the Chancery Court for Davidson County twelve years after the neighbor had sold its business to a third-party. The trial court heard the case without a jury and determined that the neighbor was no longer liable because the business had closed and had no more customers requiring parking. We disagree with the trial court's construction of the parking agreement and, therefore, reverse the judgment.

### I.

In 1977 Thomas W. Moon obtained a license to operate a retail liquor store on Richard Jones Road in the Green Hills area of Nashville. Since Mr. Moon was a practicing attorney, he formed a partnership with the store's manager, Frank G. Erwin, to operate the business. He viewed the liquor store as an investment and did not intend to remain permanently in the business.

The liquor store was located in a leased building adjacent to the Hillsboro Plaza Shopping Center ("Hillsboro Plaza"). It had very limited parking for its customers and employees, and so Mr. Moon paid $12,000 to Ming Lui, the owner of a nearby Chinese restaurant, for the right to share the restaurant's parking spaces. After discovering that Ming Lui did not have the right to grant permission to use the parking spaces, Mr. Moon entered into a temporary arrangement with Hillsboro Plaza to use several of its spaces.

Mr. Moon desired a long-term parking agreement whose term would coincide with the term of his lease for the building because he believed that having a long-term parking arrangement would enhance the value of the business. On August 7, 1978, he entered into a 24-year agreement with the partnership that operated Hillsboro Plaza giving him the "nonexclusive" right to use parking spaces near the building for his customers and to permit his employees to use less convenient parking spaces elsewhere on the shopping center property. The original annual rental fee was $9,600 with periodic increases throughout the term of the agreement.

Mr. Moon also insisted on retaining the right to assign his rights under the parking agreement since he was planning to sell the business at some future time. Accordingly, the agreement contained the following provision that is at the heart of this case:

> HPE [Hillsboro Plaza] and M & E [Moon's partnership] each shall have the right to assign or transfer its respective right, title and interest in and to this Agreement without the consent of the other party. No such assignment, however, shall operate to relieve the assigning party of any obligation or liability arising under the terms of this Agreement unless the other party hereto shall specifically agree in writing that such proposed assignment shall so relieve the assigning party.

Mr. Moon sold the liquor store to George W. Kirk less than one year after entering into the parking agreement. He approached Hillsboro Plaza about relieving him of his obligations under the parking agreement but was unable to obtain a release because he was unwilling to pay the consideration Hillsboro Plaza requested. Mr. Moon decided to assume the risk that Mr. Kirk would continue making the annual payments for the parking spaces, and on May 14, 1979, he and Mr. Erwin assigned their rights under the agree-

ment to Mr. Kirk. Mr. Moon left town to pursue other employment interests without ever being relieved of his obligations under his agreement with Hillsboro Plaza.

Mr. Kirk operated the liquor store for the next eleven years. In June 1982, Mr. Kirk and Hillsboro Plaza entered into a separate agreement expanding the parking privileges for Mr. Kirk's sublessees. However, Mr. Kirk's business declined, and in November 1990, he closed the liquor store and stopped making the payments required by the agreement.

Hillsboro Plaza gave Mr. Moon, Mr. Erwin, and Mr. Kirk notice in December 1990 that the agreement was in default. It filed suit against all three men three months later and in February 1992 proceeded to trial against Mr. Moon, the only remaining viable defendant. The trial court determined that Mr. Moon was not liable under the agreement because the liquor store had closed and no longer had any customers.

## II.

The trial court's decision hinges on its interpretation of the August 1978 parking agreement. Its interpretation is not entitled to a presumption of correctness under Tenn. R.App.P. 13(d) since contract interpretation involves a legal rather than factual inquiry. *Hamblen County v. City of Morristown,* 656 S.W.2d 331, 335–36 (Tenn.1983); *Petty v. Sloan,* 197 Tenn. 630, 637, 277 S.W.2d 355, 358 (1955); *Rapp Constr. Co. v. Jay Realty Co.,* 809 S.W.2d 490, 491 (Tenn.Ct.App.1991). Since the trial court's interpretation did not depend on disputed factual issues, our task is to review the contract anew and make our own independent determination of the agreement's meaning.

The rights and obligations of contracting parties are governed by their written agreements. The courts must interpret these contracts as written. *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn.1975); *Heyer–Jordan & Assocs. v. Jordan,* 801 S.W.2d 814, 821 (Tenn.Ct.App.1990). We are not at liberty to make a new contract for parties who have spoken for themselves, *Petty v.*

*Sloan,* 197 Tenn. at 640, 277 S.W.2d at 359, nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Atkins v. Kirkpatrick,* 823 S.W.2d 547, 553 (Tenn.Ct.App.1991); *Humphries v. West End Terrace, Inc.,* 795 S.W.2d 128, 133 (Tenn.Ct.App.1990); *Carrington v. W.A. Soefker & Sons, Inc.,* 624 S.W.2d 894, 897 (Tenn.Ct.App.1981).

The trial court determined that the enforceability of the parking agreement depended on the continuing existence of a business whose customers used the parking spaces covered by the agreement. The trial court apparently reasoned that the parties intended for the agreement to lapse if all business activities on Mr. Moon's premises ceased. Neither the language of the agreement itself nor the parties' testimony of their dealings supports this conclusion.

Mr. Moon's premises had only enough parking spaces for three or four customers. Mr. Moon knew that any retail establishment located on the premises, not just a retail liquor store, would require access to more parking spaces and that the location would be more attractive to potential buyers if more parking were available. Accordingly, he desired a long-term parking arrangement coterminous with his lease on the property. Mr. Moon did not need exclusive parking rights. The practical value of the agreement was in the additional parking it made available.

By the same token, it was in Hillsboro Plaza's interests to enter into a parking agreement with Mr. Moon. Short-term parking adjacent to Mr. Moon's location would not inconvenience the customers of the businesses in the shopping center. In addition, an agreement would generate additional income and would also foreclose future disagreements between Mr. Moon and Hillsboro Plaza over customer parking.

Contractual language should be given its usual, natural, and ordinary meaning, *Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth, Inc.,* 521 S.W.2d at 580; *Edwin B. Raskin Co. v. Doric Bldg. Co.,* 821 S.W.2d 948, 950 (Tenn.Ct.App.1991), and the courts should avoid strained constructions that cre-

ate ambiguities where none actually exist. *Empress Health & Beauty Spa, Inc. v. Turner,* 503 S.W.2d 188, 190–91 (Tenn.1973); *Farmers–Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn.1975).

The August 1978 parking agreement did not contain a cancellation clause, and we decline to supply one by implication. We cannot reasonably interpret any provision in the agreement to predicate the continuation of the agreement on the operation of a retail liquor store or any other particular type of retail business on Mr. Moon's premises. Likewise, we cannot reasonably construe any provision in the agreement to provide that the agreement would cease if no business operates on that premises.

Mr. Moon needed additional parking for his property and, as the record shows, was willing to pay for it. Hillsboro Plaza was willing to enter into a long-term arrangement with Mr. Moon based, at least in part, on its appraisal of Mr. Moon's long-term ability to pay. While Hillsboro Plaza did not object to Mr. Moon's assigning his rights under the agreement, it retained the right to continue to hold Mr. Moon financially responsible thereby protecting itself against the possibility that Mr. Moon might sell his business to someone less financially responsible than himself.

When Mr. Moon sold his business to Mr. Kirk, he consciously decided to assign his rights under the parking agreement to Mr. Kirk without also obtaining a release from Hillsboro Plaza. While his decision not to obtain a release appears unwise in retrospect, Mr. Moon assumed the risk that Mr. Kirk and Mr. Kirk's successors would continue to abide by the agreement for the remainder of its term. In effect, he became the guarantor that future occupants of the premises would continue to make the required payments. Thus, when Mr. Kirk defaulted, Hillsboro Plaza was completely within its rights to call upon Mr. Moon to perform under the agreement.

### III.

Mr. Moon asserts two other theories to support his claim that he should not be held liable under the parking agreement. Like the trial court, we find these theories to be without merit.

### A.

■ Hillsboro Plaza dealt directly with Mr. Kirk after he purchased the liquor store from Mr. Moon. Three years later, Mr. Kirk and Hillsboro Plaza found themselves in a dispute concerning Mr. Kirk's tenants' use of parking spaces. They eventually resolved the problem by entering into another agreement in June 1982 permitting the customers of Mr. Kirk's tenants to use the same parking spaces covered by the August 1978 agreement. Mr. Kirk and Hillsboro Plaza reached this agreement without consulting Mr. Moon or seeking his approval.

Mr. Moon now argues that Hillsboro Plaza's decision to deal directly with Mr. Kirk from 1979 through 1990 demonstrates that Hillsboro Plaza intended to release him from his obligations under the August 1978 agreement. We find no evidentiary basis for this assertion. The June 1982 agreement does not state that it replaces the August 1978 agreement and does not pertain to rights already governed by the August 1978 agreement. Its purpose was to grant additional rights to Mr. Kirk's tenants. Thus, as a matter of law, the June 1982 agreement supplemented the August 1978 agreement; it did not replace it.

### B.

■ Mr. Moon also claims that Hillsboro Plaza is not entitled to recover because it failed to prove that it had the authority to grant the parking rights that were the subject matter of the August 1978 parking agreement. He bases this argument on the fact that a 1967 lease agreement covering the shopping center property does not identify Hillsboro Plaza as a lessee.

The 1967 lease agreement is not the only evidence in the record of Hillsboro Plaza's interest in the property. Mr. Robert Trentham, one of Hillsboro Plaza's partners, testified:

> That entire shopping center, to my knowledge, is ground leased from the Becker family through sometime [sic] in early 2,000—2005, '6 or '7. All of the property out there where you have shop-

ping center improvements with Levy's Building is ground leased by either Hillsboro Plaza or Hillsboro Plaza Enterprises pursuant to an original agreement with the Beckers that predated my involvement in the properties at all.

Mr. Trentham's testimony substantiates Hillsboro Plaza's authority to enter into the August 1978 parking with Mr. Moon. Mr. Moon did not object to this testimony or introduce evidence to contradict it. Therefore, we conclude that the record does not support Mr. Moon's assertion that Hillsboro Plaza did not prove that it had the authority to enter into the parking agreement.

### IV.

We reverse the trial court's dismissal of Hillsboro Plaza's complaint and remand the case for the calculation of damages. The damages shall be governed by the August 1978 agreement and, therefore, according to Paragraph 6 of the agreement, may include the legal expenses Hillsboro Plaza has incurred in its efforts to enforce the agreement. The costs of this appeal are taxed to Thomas W. Moon for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.