**IN THE COURT OF APPEALS OF TENNESSEE**

**EASTERN SECTION AT KNOXVILLE**

FILED

February 5, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| RICHARD E. PERRY, and wife, | ) | |
| TAMELIA PERRY, | ) | |
| | ) | |
| Plaintiffs/Appellees | ) | UNION CHANCERY |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY FLATFORD, and wife, | ) | NO. 03A01-9609-CH-00305 |
| TERESA FLATFORD, BRENDA DYE, | ) | |
| GORDON WHITE, REMAX | ) | |
| PREFERRED PROPERTIES, INC., | ) | |
| DAVID SNELSON, BEVERLY V. | ) | |
| McMAHAN, CROSSROADS REALTY, | ) | |
| JIM PEMBERTON, JR., | ) | |
| RANDY BUTTON & ASSOCIATES, | ) | |
| INC., d/b/a EAST TENNESSEE | ) | |
| APPRAISAL GROUP and HARRY W. | ) | |
| FERSNER, | ) | |
| | ) | |
| Defendants/Appellants | ) | VACATED and REMANDED |

Lewis S. Howard, Jr., Knoxville, for Appellant Brenda Dye
Boyd W. Venable, III, Knoxville, for Appellants White and Remax

Johnny V. Dunaway, LaFollette, for Appellees Perry

**O P I N I O N**

INMAN, Senior Judge

This is an action for damages allegedly sustained by the plaintiffs as a result of misrepresentations made to them in their purchase of a residence.

The defendants are identified in Appendix A to this Opinion, together with the allegations made against each of them.

The residence was served by well water which the sellers had tested upon the advice of their agent, Dye. The water was contaminated; the Union County Health Inspector advised the sellers to pour Clorox into the well, wait one day, and re-test the water. The second test revealed no contamination. Thereafter, the transaction was closed, but in the course of time, after the plaintiffs had moved in, the contamination reappeared.

The Health Code of Union County requires a distance separation between a

well and septic tank of 50 feet. FHA regulations require a separation of 60 feet, and require the well to produce a minimum of three gallons per minute for four hours. The FHA also requires a plumber's certification of production and separation. The plumber, Fersner, obliged by filling in the required form; but shortly thereafter, the closing company advised that "they wanted the well certificates to be 100 feet from the septic field," and Fersner obliged when requested by Dye to sign the new dimension.

At the trial, Fersner admitted that he did not accurately determine the distance from the well to the septic field, nor did he determine the water production of the well.

An FHA appraisal was made by Pemberton, an original defendant, who was non-suited. Pemberton failed to memorialize various defects in the house which would have resulted in a rejection of FHA financing. After the plaintiffs moved in, they requested a review appraisal which resulted in a litany of defects being noted, but the appraisal remained in the $68,000 - $70,000 range. The other defects were relatively minor ones, chiefly concerning the electrical system.

Because of the contaminated water, the plaintiffs moved out of the house after about three months, and essentially abandoned it. The FHA mortgage, which financed 100 percent of the purchase price, was foreclosed. The purchase price was $84,000, which effectively canceled the indebtedness. This action was filed January 18, 1995.

The defendants generally denied all allegations of misrepresentation, fraud or statutory violations.

The Chancellor found Dye guilty of deceit, concealment, negligent misrepresentation, fraudulent misrepresentation and violating the Consumer Protection Act. A judgment was rendered against her and her principals, White and Remax, for 50 percent of the award of actual damages of $23,750 plus double damages of $23,750, for a total award of $35,625. Judgment for ten percent of the total award, or $2,375, was awarded against the Flatfords, and for 35 percent of the total award, or $8,312.50, against Snelson, McMahan and Crossroads Realty. The plaintiffs were found to have been five percent at fault.

2

To these awards was added the additional sum of attorneys fees and costs of $16,138.30. Only Dye, White and Remax Realty have appealed.

Because the issue of damages is determinative of this appeal, we do not believe it necessary to particularize the testimony concerning the actions of Dye, who was the selling agent for the owners. At no time did she communicate with the plaintiffs. The chief complaint against her appears to be over-zealousness in persuading the plumbing inspector - Fersner - to misrepresent the distance between the well and the septic field. Even so, Fersner's certification was not presented at the closing of the transaction, and for this reason we doubt its efficaciousness to the plaintiff's case. Moreover, the case against Fersner was non-suited, and the Chancellor apportioned no fault to him. For the same reasons we do not believe it productive to particularize the nature of the alleged defects further than we have shown.

### The Issue of Damages

The parties agree that the proper measure of damages was the difference between the amount the plaintiffs paid for the property and the amount it was worth had the alleged defects been disclosed. See *Haynes, infra.*

The damages witness for the plaintiffs, Roger Ball, testified:

Q:     After your viewing of this property and looking at these various areas of problems, do you have an opinion as to what the *current* market value of this house is?

A:     Well, I'm thinking it's probably like thirty thousand dollars.

        . . . . .

Q:     As a general contractor do you have an opinion of the kind of money that it would cost just to repair the defects that you are aware of that are open and obvious to you from having thoroughly inspected the house?

A:     Well, I'm going to say it; probably twenty-five to thirty thousand dollars - potentially that . . .

        The appellants argue that the opinion of Mr. Ball was neither admissible nor probative because his review or appraisal of the house was done

3

*more than eighteen months* after the plaintiffs abandoned it. On this point, he testified:

Q: So its fair to say that you have absolutely no knowledge whatsoever of the market value or reasonable value of this house prior to September 1, 1994, correct?

A: I don't know, that's true.

A difficulty confronting the plaintiffs is that they purchased the house on September 1, 1994, for $73,000. (entirely financed by an FHA mortgage), lived in the house for two or three months, made no payments on their mortgage, and then abandoned it. The mortgage was foreclosed and the house was sold for $84,424.95. So far as the record reveals, the plaintiffs made a profit, since there is no evidence of the deposition of the excess of $11,000. There is no evidence in the record that had the requisite repairs been made the house would have sold for more, or would have had a greater value than the amount brought at foreclosure. The damages witness, Roger Ball, testified about the *current* [May 1996] value of the house, which was irrelevant since the plaintiffs no longer owned it. The salient transaction occurred 21 months earlier, in September, 1994, and the house had been sold April 10, 1996 for $84,424.95. The measure of damages and the fixing of the value of the property are to be determined as of the time of the transaction. *Haynes v. Cumberland Bldrs., Inc.,* 546 S.W.2d 228 (Tenn. Ct. App. 1976).

The plaintiffs made no effort to remedy any defects. They merely elected to abandon the house, thereby exacerbating the defects, according to their own expert. No efforts were made to mitigate damages. Foreclosure of the mortgage for non-payment of the note installments extinguished the plaintiffs' debt. It is settled law in this State that a foreclosure bid, absent any irregularity in the foreclosure sale, is the best evidence of value at the time of the sale. *Duke v. Daniel,* 660 S.W.2d 793 (Tenn. Ct. App. 1983), and cases cited. It is well-nigh conclusive.

We have examined the case at length to determine if any award of damages could be based on the benefit of the bargain measure. The complaint does not allege a loss of benefit of the bargain, and no evidence whatever was offered on the

point. The Chancellor, as in *Haynes v. Cumberland Builders, Inc.,* 546 S.W.2d 278 (Tenn. Ct. App. 1976), "had before him only estimates of the value of the property in controversy *at the time of trial,"* (emphasis in original) which, as we have noted, is of slight probative value. While the witness Ball testified concerning the cost of repairs, none was made or attempted; Mr. Ball vacillated on cross-examination, admitted a considerable lack of pertinent knowledge and information, and conceded that he was to an extent speculating. Even so, the foreclosure bid conclusively established the value of the property, defects and all. *Duke, supra.*

The plaintiffs are entitled to recover for all losses proximately caused by Dye and her principals. However, they have the burden of proving their damages to a reasonable certainty. *Brice v. Scroggs Equipment Co.,* 267 S.W.2d 119 (Tenn. Ct. App. 1963).

In an action for damages caused by fraudulent misrepresentation, the proper measure of the plaintiff's general damages is the benefit of the bargain rule. *Haynes v. Cumberland Builders, Inc., supra.* This measure allows the plaintiff to recover the difference between the actual value of the property and the value that the property would have possessed if the representations had been true. *Haynes, supra.* As we have observed, the only testimony of value in this record is that of Roger Ball, who opined as to its value as of the date of trial, which was unprobative.

We think the plaintiffs' case against Dye and her principals must fail because of a total failure to prove damages by any recognized standard in this State. Our review is *de novo* on the record, with no presumption of correctness as to matters of law. *Hillsboro Playa Enter. v. Moon,* 860 S.W. 2d 45 (Tenn. Ct. App. 1993).

Accordingly, the judgment against Dye, White and Preferred Properties/Remax is vacated with costs assessed to the appellees.

_____
William H. Inman, Senior Judge

CONCUR:

5

_____
Houston M. Goddard, Presiding Judge


_____
Don T. McMurray, Judge


# A P P E N D I X   A

| DEFENDANTS | ALLEGATIONS IN COMPLAINT |
|---|---|
| Terry Flatford and wife Teresa Flatford | Sellers under 7/9/94 contract in which plaintiffs were buyers of a house. |
| Brenda Dye | Sales agent who represented Flatfords. |

| | |
|---|---|
| Gordon White | Broker who employed sales agent Dye. |
| Preferred Properties, Inc. | Agency which employed agent Dye. |
| David Snelson | Sales agent who represented plaintiffs. |
| Beverly V. McMahan, d\b\a Crossroads Realty | Broker and agency which employed sales agent Snelson. |
| Jim Pemberton, Jr. | Appraiser employed by East Tennessee Appraisal. |
| Randy Button & Assoc., Inc. d\b\a\ East Tennessee Appraisal Group | Company employed by plaintiff and Barclays to appraise the house for sale. |
| Barclays American Mortgage Corporation | Company issuing mortgage to plaintiff. |
| Harry W. Fersner | Licensed plumber hired by Flatfords to inspect plumbing, water & septic. |

Plaintiffs were without specialized knowledge and necessarily relied on inspections and representations made by the defendants in their decision to purchase the house. Plaintiffs closed the sale on September 1, 1994. After taking possession, plaintiffs discovered material misrepresentations and serious undisclosed hidden defects:

(a) The well was too shallow and provided inadequate, contaminated water. Defendants Flatford knew this and withheld information from plaintiffs.

(b) The well was too close to the septic tank and drain fields in violation of codes and accepted health standards.

(c) Some drains did not drain into the septic system but onto the driveway.

(d) "Dummy" electrical outlets were in place in the house. Defendants Flatford knew this and failed to disclose it.

(e) The electrical panel box was installed in violation of the electrical code.

(f) The appraiser incorrectly certified the location of the property.

(g) Plaintiffs' inspector discovered many more defects. Cost of making repairs far exceeded the alleged value of the house when the complaint was filed. Plaintiffs were forced to vacate and foreclosure was initiated.