IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

July 30, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

ALFORD RODGERS and      )   KNOX COUNTY
SUZANNE RODGERS         )   03A01-9708-CH-00371
                        )
    Plaintiffs-Counter-  )
    Defendants-Appellees )
                        )
    v.                  )   HON. FREDERICK D. McDONALD,
                        )   CHANCELLOR
DON WALKER              )
                        )
    Defendant-Counter-   )   AFFIRMED AS MODIFIED
    Plaintiff-Appellant  )   and REMANDED


J. THOMAS JONES OF KNOXVILLE FOR APPELLANT

DAVID A. LUFKIN OF KNOXVILLE FOR APPELLEES


O P I N I O N


                                    Goddard, P.J.



        Alford and Suzanne Rodgers filed a complaint in Knox
County Chancery Court seeking damages arising from the
construction of their home.  The suit was brought against the
general contractor, Don Walker.  The Rodgerses alleged a breach
of the construction contract on the part of Mr. Walker and sought
damages for excessive costs and unreasonable delay in
construction.

Mr. Walker answered the complaint and filed a counter-claim seeking a past due balance on the project. The alleged unpaid balance was $95,543.08 for costs of completing construction plus a 15 percent contractor's fee.

The Chancellor's final judgment, which incorporated his memorandum opinion, awarded the Rodgerses a money judgment against Mr. Walker in the amount of $24,256.16.

After the conclusion of post-trial motions, the Chancellor reduced the money judgment to an even $24,000. A timely notice of appeal was promptly filed by Mr. Walker, and this appeal followed.

The Rodgerses and Mr. Walker entered into a construction contract dated July 14, 1994. The contract was a preprinted form titled "Sales or Construction Contract," with blanks to be filled in as to certain information. The blanks were filled in and other language was added to the preprinted form. Several pages were attached to the contract setting forth various materials, including proposed allowances and house plan sketches.

The Rodgerses submitted the contract to Home Federal Savings Bank in order to obtain a construction loan. The Rodgerses and Mr. Walker both signed a construction loan agreement provided by Home Federal stating that the house was to be completed no later than 360 days from the signing of the construction contract.

2

Paragraph 3 of the contract relates to price and terms and provides in part: "HOME to be built on a 'COST PLUS 15%' (ESTIMATED cost is $230,000.00)."[1]  The parties added this language to the preprinted contract in typewritten form.  Mr. Walker's first estimate for the house was $298,000, but the Rodgerses made it clear they could not afford that price.

Paragraph 5 relates to the completion and delivery date of the residence.  The blank line for the number of days was filled in such that paragraph 5 states:

> It is agreed that the property will be ready and tendered for delivery on or before the expiration of 210 days from the date of this contract.  Otherwise, the purchaser will have the option of canceling this contract and obtaining a refund of his earnest money deposit.

However, at the end of paragraph 5, the parties added: "If LOAN is approved within thirty (30) days."  The loan was not approved within 30 days.

At the time of the contract the parties intended that Mr. Walker would build the Rodgerses a two level, 3,200 square foot house.  The house that was ultimately constructed was a three level, 4,800 square foot house.  The additional level and square footage were the result of a basement being added, because the slope of the lot and soil conditions made it more efficient to put in a lower level.  Mr. Walker had an opportunity to view the land where the house was to be built before the parties entered into the contract.

---

[1]    The estimated cost of $230,000 for the house included the price of a swimming pool ($22,000), which was not to be built by Mr. Walker.

The Rodgerses were in Europe when the decision was made to add the basement. When the Rodgerses returned to surprisingly find their home had a basement they did agree to pay for the extra work. Later, a letter was sent to the Rodgerses stating that the cost overrun attributed to the added basement was $10,064. There is conflicting testimony regarding decisions to finish the basement and other changes and additions made during the construction process.

Throughout construction the Rodgerses were presented with monthly statements for costs of materials and services, plus Mr. Walker's 15 percent contractor's fee. The Rodgerses paid all of the statements sent to them except for the last one which totaled an unexpected $95,543.08. Before the submission of the last invoice, the Rodgerses had already paid approximately $220,000.

The residence was not completed within the 210-day period provided for in paragraph 5 of the construction contract. Mr. Walker admitted at trial that there was a two-month delay in obtaining the stucco contractor which appeared to be a major reason for the delay. Eventually, the Rodgerses moved into the house in early August of 1995, before it was completed and more than a year after the contract was signed. Soon thereafter, the Rodgerses' attorney sent Mr. Walker a letter terminating him from the job because of undue delay.

During the construction process, the Rodgerses attempted to close on the permanent mortgage on numerous occasions but were unable to do so because of Mr. Walker's

4

delays. In June 1995, when the Rodgerses were preparing to close their permanent mortgage, Mr. Walker provided the Rodgerses with a document titled "Approximate Cost to Finish," wherein he estimated that it would cost approximately $46,300 to finish the house. The Rodgerses used this figure to obtain a final closing for a permanent mortgage. As stated above, the final bill provided to the Rodgerses was approximately $50,000 more than the estimate given only a few months earlier.

After terminating Mr. Walker, the Rodgerses hired Herman Love to finish the house. Mr. Love finished the house and was paid $24,669.90 for his costs and services.

The Chancellor awarded the Rodgerses $63,611.16 on their claim for damages and awarded Mr. Walker $39,355 on his counter-claim. The balance of the awards left Mr. Walker owing the Rodgerses approximately $24,000. As stated above, Mr. Walker then timely filed his notice of appeal to this Court on December 15, 1997.

The following issues, which we restate, are presented by Mr. Walker:

> I. Did the Chancellor err in calculating damages by using the estimated costs rather than the actual costs?

> II. Did the Chancellor err by subtracting the 15 percent contractor's fee from the amount owed to Mr. Walker by the Rodgerses?

> III. Did the Chancellor err in awarding the Rodgerses construction loan interest as part of their damages?

IV.  Did the Chancellor err in awarding the
Rodgers damages for items that were not "punchlist"
items but were additional work not covered by the
contract with Mr. Walker?

Mr. Walker contends that the Chancellor improperly used the estimated cost rather than the actual cost in calculating damages under the cost plus contract between the parties.  Issues involving a trial judge's contract interpretation have no presumption of correctness on appeal.  *Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45 (Tenn.App.1993).  However, in cases such as this, where the case was tried without a jury, there exists a presumption of correctness as to findings of fact by the trial court.  Rule 13 of the Tennessee Rules of Appellate Procedure.  However, no presumption arises as to questions of law.  *Campbell v. Florida Steel Corporation*, 919 S.W.2d 26 (Tenn.1996.)  The case *sub judice* involves both questions of law (contract interpretation) and of facts.  The first issue before this Court is one of proper contract interpretation.

There is no question that the construction contract entered into between the Rodgerses and Mr. Walker was a cost plus 15 percent agreement.  The Chancellor made such a ruling early in the trial and the Rodgerses do not dispute that ruling.  Mr. Walker argues that the Chancellor's final ruling on damages contradicted the holding that the contract was cost plus because Mr. Walker felt the damages were based on the final estimate of $46,300 instead of his actual costs.

Generally, damages under a cost plus contract are based on the actual costs incurred in building the house. When an estimate is provided in a cost plus contract it is simply that--an estimate, not a fixed price or guaranteed maximum. *Davis v. Sliney*, an unpublished opinion of this Court, filed in Jackson on July 21, 1988. Mr. Walker argues that the *Davis* case is very similar to this case. In *Davis*, the contractor provided a final estimate to complete the house of between $18,000 and $20,000, but the final bill was for a little over $39,000. The Court of Appeals held the contract was cost plus and that the contractor was entitled to his actual costs. Mr. Walker claims the same result should follow here because there is no dispute that Mr. Walker incurred the expenses he is asserting.

The problem with Mr. Walker's reliance on *Davis* is that there is no discussion in that case referring to a provision like paragraph 7 in the contract with the Rodgerses. Paragraph 7, titled "CHANGES AND ADDITIONS" states:

> If proposed construction or under construction, it is understood that any additions or changes not included in plans and specifications are to be agreed upon between the contracting parties and are to be confirmed in writing as the work progresses.

The Chancellor's ruling emphasized that--although the contract was cost plus--all provisions in the contract must be considered in calculating damages. He interpreted paragraph 7 as placing a duty on Mr. Walker to keep the Rodgerses reasonably informed of increasing costs beyond the estimate of $230,000.[2] The

---

[2] The construction interest agreement with Home Federal also included a provision to inform Home Federal in writing of any changes or additions that would substantially increase the cost of construction.

Chancellor's opinion stated, "There must be some point at which an owner receives some protection even under a cost plus percent contract so as not to end up finding themselves in a position where they owe a tremendous additional amount of money that was unexpected."

We agree with the Chancellor's statement, but only when a cost plus contract contains a provision like paragraph 7--the type of provision that places a specific duty on the contractor to get written confirmation of additions and changes that add substantial costs to the construction of the house. If the cost plus provision is to be enforced so must all other valid provisions in the contract.

The Chancellor held that in light of paragraph 7 the $50,000 of additional charges were unreasonable without the matter being agreed upon in writing. Therefore, the Chancellor's final judgment did not contradict his ruling that the contract was cost plus. The damages were simply calculated on what the Rodgerses could reasonably be expected to pay pursuant to Mr. Walker's breach of paragraph 7.

Mr. Walker argues in the alternative that even if paragraph 7 does allow for such a calculation of damages the Rodgerses waived strict compliance with the provision. The Rodgerses did admit to asking for some small changes and not requiring written confirmation for those. However, there is much disputed testimony as to which party was responsible for the major changes that resulted in the huge additional expenses. It

8

is clear that the basement, which was the main reason for the extra costs, was added without the Rodgerses' prior approval.

Regardless of the Rodgerses conduct, the written change order requirement cannot be waived. "The clear meaning of Tenn.Code Ann. § 47-50-112(c) prevents giving effect to oral or implied waivers of the terms of a contract which requires a written waiver." *Barnett v. Willis*, an unpublished opinion of this Court filed in Nashville on June 13, 1990. The Court in *Barnett* held that T.C.A. 47-50-112 supersedes prior case law that holds the requirement of a written change order in an express contract can be waived by the owner's conduct. Therefore, we hold that paragraph 7 was not waived and Mr. Walker was obligated to provide such written change orders.[3]

Mr. Walker next argues that even if the Chancellor's general calculation of damages is proper, the Chancellor erred in subtracting the 15 percent contractor's fee from the balance owed Mr. Walker. Mr. Walker was allowed to recover $46,300 as reasonable costs the Rodgerses had to pay. However, the Chancellor decided to subtract from that figure Mr. Walker's 15 percent fee even upon no clear evidence the fee was even included in the balance due.

We understand why Mr. Walker was not allowed to recover his contractor's fee on the amount that was held to be unreasonable and required written confirmation. We do not see

---

[3] Mr. Walker's own expert witness admitted at trial that a contractor should provide buyers with written confirmation of major changes that will result in excessive cost overruns.

any reason why Mr. Walker is not entitled to his contractor's fee on the costs that were reasonable for the Rodgerses to pay.

The Rodgerses are to receive damages that would put them in the same position they would have been in had Mr. Walker not breached the contract. They should not profit by the defendant's breach. *Hennessee v. Wood Group Enterprises, Inc.*, 816 S.W.2d 35 (Tenn.App.1991). Although Mr. Walker did not put forth sufficient evidence to show that the 15 percent fee should be added to the balance due, subtracting the fee would be punitive to Mr. Walker and allow the Rodgerses to profit. Therefore, we hold that it was error for the Chancellor to subtract Mr. Walker's contractor's fee from the reasonable balance due by the Rodgerses.

Mr. Walker also argues that the Chancellor erred in awarding the Rodgerses construction loan interest as an element of damages. Paragraph 5 of the construction contract provided that the Rodgerses could cancel the contract and obtain a refund of their earnest money if the construction of the house was not completed on time. Mr. Walker does not dispute that he breached the contract by not finishing the construction on time. However, he claims that the Rodgerses did not assert their contractual rights to damages and thus waived any right to recover damages for the delay. Mr. Walker would be correct if it was not for the provision that was added to the end of paragraph 5 by the parties which states: "If the LOAN is approved within thirty (30) days." The loan was not approved within 30 days, thus making paragraph 5 void.

Without valid provisions for a completion date and one restricting recovery, the Chancellor properly calculated damages based upon a reasonable time for completion and foreseeable damages. The Chancellor looked to both the 210-day completion time period in the construction contract and the 360-day period in the loan agreement with Home Federal in order to determine a reasonable time for completion. The Chancellor concluded that a 360-day completion period was reasonable because it was 150 days longer than what Mr. Walker had contracted for originally and also because Mr. Walker had signed the agreement with Home Federal giving him notice that the construction loan was based on a 360-day completion period.

Because Mr. Walker signed the construction loan agreement, the Chancellor held that construction loan interest as an element of damages was foreseeable. We agree with the Chancellor's holding on this issue but rule that he erred in awarding the Rodgerses $14,400 in interest.

As stated above, the Rodgerses should only be put back in the position they would have been in had Mr. Walker fully performed the contract. If the construction was completed on time the Rodgerses would not have had to pay the additional construction loan interest, but they would have had to pay a mortgage payment upon conversion of the construction loan to a permanent mortgage. Therefore, the Rodgerses are entitled to the $14,400 minus the interest on their monthly mortgage payments based on a reasonable rate the Rodgerses could have obtained at the end of the 360-day completion period. A reasonable monthly

11

mortgage payment must be determined in order to recalculate the total construction interest the Rodgerses should be awarded.

In addition, there should be added to the foregoing the amount of interest the Rodgerses had to pay because the house was not completed within the 360-day period. This would be calculated by determining the time period--if any--between the end of the 360-day period and the date the permanent loan was obtained. For example, if it is determined the delay was a period of three months, the interest as to the last three months of the loan should be added to the interest initially determined to be owed.

Mr. Walker's final argument is that the Chancellor erred in awarding the Rodgerses damages for items that were not "punchlist" items but were additional work not covered by the contract. Although the Chancellor is best suited to make these factual determinations and we review them under a presumption of correctness, we do hold that one item was included in the Rodgerses' damages that was clearly not covered by the contract. The trial record made it quite clear that the $24,669.90 paid to Mr. Love for the additional work needed on the house included a $5000 charge for banister work. These banisters were not part of the contract between the Rodgerses and Mr. Walker and, thus, are not the responsibility of Mr. Walker to pay. Therefore, the $5000, plus Mr. Love's 15 percent contractor's fee on that amount, should be subtracted from Mr. Love's total charges, resulting in a new balance of $18,669.90.

However, we also find that the Chancellor made a similar error in calculating the balance due to Mr. Walker. Mr. Walker's balance due of $46,300 included a charge of $5,500 for pool work. Mr. Walker admitted at trial that these were costs of the pool builder and not his. Therefore, the $5,500 plus his 15 percent contractor's fee should reduce the balance due. The final payment owed by the Rodgerses to Mr. Walker would then total $39,975. We find no error in all the other items included by the Chancellor in the damage calculations.

Our corrections to the damage award results in Mr. Walker recovering $39,975 for unpaid costs. The Rodgerses are entitled to the $18,669.90 they had to pay Mr. Love and the $24,541.26 spent on materials to finish the house, totaling $43,211.16. The Rodgerses are further entitled to the construction interest remaining after reasonable mortgage payments have been subtracted. Therefore, the sum result is an award of $3,236.16 plus the remaining construction interest for the Rodgerses.

For the reasons stated above, the judgment of the Chancery Court is affirmed as modified and remanded for recalculation of interest the Rodgerses should recover in accordance with this opinion and collection of the judgment and costs below. Costs of appeal are adjudged against the Rodgerses and their surety.

_____
Houston M. Goddard, P.J.

CONCUR:

13

_____
Don T. McMurray, J.


_____
Charles D. Susano, Jr., J.