# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| MARY SHEILA SUTOSKI HENNIGAN, | ) | |
| Plaintiff/Appellee, | ) | Appeal No. |
| | ) | 01A01-9807-CH-00380 |
| vs. | ) | |
| | ) | Bedford Chancery |
| ALVIN HENNIGAN, JR., | ) | No. 12628 |
| Defendant/Appellant | ) | |

**FILED**

May 26, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

## APPEAL FROM THE CHANCERY COURT
## FOR BEDFORD COUNTY
## AT NASHVILLE, TENNESSEE

## THE HONORABLE TYRUS COBB, CHANCELLOR

ROBERT TODD JACKSON
222 Second Avenue North
Suite 419
Nashville, TN 37201

ATTORNEY FOR THE DEFENDANT/APPELLANT

FRED C. STATUM, JR.
2200 First Union Tower
150 Fourth Avenue North
Nashville, TN 37219

ATTORNEY FOR THE PLAINTIFF/APPELLEE

## AFFIRMED AND REMANDED

PATRICIA J. COTTRELL, JUDGE

CONCUR:

CANTRELL, J.
KOCH, J.

# OPINION

Appellant, Alvin Hennigan, (hereinafter referred to as Father) appeals the trial court's order requiring him to pay his daughter's college expenses pursuant to the Property Settlement and Child Custody Agreement entered into with Appellee, Mary Sheila Sutoski Hennigan, (hereinafter referred to as Mother) at the time of their divorce and a later amendment. For the reasons stated hereinafter, we affirm the judgment of the trial court.

The parties were divorced on February 24, 1984. At the time of their divorce they had three minor children, ages 5, 9 and 12. The divorce was based on irreconcilable differences. The parties entered into a Property Settlement and Child Custody Agreement which was approved by the court and incorporated into the Final Decree granting divorce. The agreement contained a provision regarding the children's college education which stated:

> The husband further agrees that he will pay for reasonable educational expenses, as child support for the children of the parties, incurred by said children through the obtaining of an undergraduate degree by each of said children, or upon each of said children reaching twenty two years of age, whichever occurs sooner.

> Wife agrees to aid husband in the payment of the college educational expenses of the parties' children commensurate with her financial condition at the time.

In 1994, the parties were again in court to clarify their respective financial duties regarding support for their children, including their children's college educations. On December 7, 1994 the parties entered into an agreed order which contained the following provision:

> Respondent has previously agreed to and embodied by Court Order shall continue to be responsible for the reasonable college expenses of the parties' children,

Christopher Matthew Hennigan and Meghann Hennigan, as set forth in the prior Court Order. Specifically respondent shall continue to provide room, board and tuition and Petitioner by virtue of prior court order requiring her to assist financially based upon her income shall provide and pay for all other necessary expenses related to college education of the parties' children.

The parties' youngest daughter, Meghann, was an exceptional student in high school, graduated with high honors from a private school in New York in 1996, and applied to a number of prestigious universities. She was accepted to the University of Notre Dame in South Bend, Indiana, and began school there in the fall of 1996. Father paid only a portion of the room, board, and tuition for the years 1996-1997 and 1997-1998. It is undisputed that the total cost of room, board, and tuition at Notre Dame, at the time, was in excess of $16,000 per semester. It is also undisputed that Father's income during the time period in question ranged from $343,690 to $583,793.

Mother sued to enforce the terms of the 1994 agreed order. Father argued that he should not have to pay the full amount of room, board, and tuition for his daughter's education at Notre Dame. He insisted that a court order to pay for an adult child's higher education is unenforceable, even where the order is based upon an agreement between the parties. In the alternative, he argued that the use of the words "reasonable college expenses" was so ambiguous as to render the order and the underlying agreement unenforceable. The trial court ruled in favor of Mother and ordered the defendant to pay the difference between what he had already contributed and the full amount of his daughter's room, board, and tuition for the years 1996-97 and 1997-98, which was calculated to be $18,227. Further, the trial court ordered that Father pay for his daughter's two remaining years at Notre Dame. This appeal by Father followed. We affirm the ruling of

3

the trial court.

## I.

Father argues that the agreement that he pay for his child's college education is unenforceable because he has no legal duty to support a child who is over 18 years of age and has graduated from high school. It is generally true that a parent cannot be ordered by the courts to pay child support for an adult child. *Blackburn v. Blackburn*, 526 S.W.2d 463 (Tenn. 1975); *Garey v. Garey*, 482 S.W.2d 133 (Tenn. 1972); *Jones v. Jones*, 503 S.W.2d 924 (Tenn. App. 1973).

However, a party to a divorce may by agreement obligate himself or herself beyond the support duties imposed by law. Such provisions in an agreement are enforceable as contractual obligations even though the agreement is incorporated into a divorce decree. *Penland* v *Penland,* 521 S.W.2d 222 (Tenn. 1975); *Blackburn v. Blackburn*, 526 S.W.2d 463, 465 (Tenn. 1975). Parties to a divorce proceeding "should be able to obligate themselves by agreement beyond what the courts could order them to do as a matter of law. " *Holt v. Holt*, 751 S.W.2d 426, 428 (Ten. App. 1988). Any voluntarily assumed obligation exceeding the minimum child support required by statute is based on the parties' contract, enforceable as a contractual obligation, and controlled exclusively by the agreement. *Haas v. Haas*, No. 02-A-01-9604-CV-00073, 1997 WL 194852*3, (Tenn. App. April 22, 1997) (No Tenn. R. App. R.11 application filed).

The courts in Tennessee have consistently held that a parent's agreement to provide for college education expenses beyond the age of a child's majority is enforceable as a contractual obligation and is a "valid contractual area for husband and wife in the throes of divorce." *Penland v. Penland*, 521 S.W.2d

4

222, 224 (Tenn. 1975). An agreement which imposes upon a party a duty to pay future educational expenses of children beyond high school level, and which necessarily envisions an obligation beyond the age of majority, constitutes "a contractual obligation outside the scope of the legal duty of support during minority and retains its contractual nature, although incorporated in a final decree of divorce." *Id.* at 224-25. *See also Duggan v. Bohlen*, No. 01-A-01-9611-CV-00535, 1997 WL 379177*2 (Tenn. App. July 9, 1997) (No Tenn. R. App. R.11 application filed).

Father argues that the wording of the 1984 agreement which characterizes the college education expenses as "child support" renders the agreements unenforceable.[1] This argument is without any basis. First, the two agreements clearly embody Father's promise to pay for his children's college education. Second, even if the agreements obligated Father to pay post-majority support, not college expenses, they would be enforceable. A party may agree to provide child support beyond that required by law and modifiable by the court, and such agreement is enforceable by the court as any other contract. *Penland,* 521 S.W.2d 222 (Tenn. 1975); *Boutin v. Boutin,* No. 01-A-01-9601-CH-00014, 1996 WL 694122 (Tenn. App. Dec. 5, 1996) (No Tenn. R. App. R.11 application filed); *Dorris v. Dorris,* No. 01-A-01-9304-CV-00170, 1993 WL 380778 (Tenn. App. Sept. 29, 1993) (No Tenn. R. App. R.11 application filed).

Therefore, we find that Mr. Hennigan's agreement to pay for Meghann's room, board, and tuition is enforceable as a contractual matter.

---

[1] Because the 1994 agreed order references the obligations set forth in the 1984 settlement agreement and order, Father argues the 1994 order is also unenforceable since it is a clarification of the "child support."

II.

Next, Father attempts to avoid the effect of his prior commitment based on the use in the agreements of the phrase "reasonable college expenses." He submits that the term "reasonable college expenses" is sufficiently vague and ambiguous to void the parties' agreements for want of mutuality and failure of a meeting of the minds.

The trial court's interpretation of the provision of the agreements, being contractual in nature, is not entitled to a presumption of correctness under Tenn. R. App. P. 13(d) since contract interpretation involves legal rather than factual inquiry. *Hillsboro Plaza Enterprises v. Moon*, 860 S.W.2d 45, 47 (Tenn. App. 1993). Our task is to review the contracts anew and make our own independent determination of the agreements' meaning. *Id*. at 47. However, this Court is not at liberty to make a new contract for parties who have spoken for themselves nor are we at liberty to relieve parties from their contractual obligations simply because these obligations later prove to be burdensome or unwise. *Id.*

Father's argument that the word "reasonable" is vague and renders an agreement void militates against well-settled principles of contract law, and appellant has failed to provide any authority to this court in support of his position. It cannot be said that the use of the term "reasonable" creates an ambiguity which makes an agreement unenforceable. In fact, under Tennessee law contracts are subject to an implied condition of reasonableness, even where the term "reasonable" is not used in the contract. *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. App. 1980); *Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887 (Tenn. App. 1995). In fact, in *Cagle v. Cagle*, No. 02-A-01-9710-CH-00265, 1998 WL 80219*3 (Tenn. App. Nov. 18, 1998), (No Tenn. R. App. R.11 application filed), this court agreed with the father that his agreement to pay his

6

son's college expenses was subject to the implied condition of reasonableness.

It has been held in Tennessee that "a contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." *Farmers-Peoples Bank v. Clemmer,* 519 S.W.2d 801, 805 (Tenn. 1975); *Empress Health and Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188 (Tenn. 1973).

In making his "ambiguity" argument, Father overlooks the 1994 agreed order wherein the parties more specifically defined their respective obligations. He agreed to pay room, board, and tuition as the "reasonable college expenses" of Christopher and Meghann. Further, the clear and specific language of the 1994 order refutes Father's contention that Mother should be required to pay some portion of Meghann's room, board, and tuition as part of her agreement to aid Father in the payment of college expenses. Mother's obligation, as well as Father's, is set out in the 1994 order with reference to specific items to be paid by each. Father complains that he should have been allowed to conduct discovery regarding Mother's financial situation. We agree with the trial court that Mother's finances were irrelevant to the issue in this lawsuit: whether Father had fulfilled his obligations.

Therefore, we further find that the agreements herein are not ambiguous and that Mr. Hennigan's commitment to pay Meghann's room, board, and tuition is enforceable.

III.

On appeal, Father's only complaint about the reasonableness of the room, board, and tuition expenses at Notre Dame appears to be his opinion that the two-thirds he has paid is reasonable and that Mother should be required to pay the remainder. Unfortunately for Mr. Hennigan, that is not the agreement he made. Had he intended to limit the total amount of his obligation or to obligate himself only for a percentage of the total cost, Father could have done so in the agreements he signed. *See Cagle v. Cagle*, 1998 Tenn. App. WL 80219*3 ("If father had wanted to be responsible for his son's college expenses only upon the son attending a public university, the MDA provision could have been drafted to include such limiting language.") Instead, he limited his obligation by committing himself to pay only room, board, and tuition. Any other expenses are to be paid by Mother.

There was evidence presented at trial which is relevant to a consideration of reasonableness. Father's adjusted gross income for 1994 was $483,730; for 1995 it was $583,793; for 1996 it was $343,690. Father also testified to other valuable assets he owns. While Father testified that his current monthly expenses exceed his monthly income, the trial court was not persuaded that the college expenses of his daughter were unreasonable in light of his ability to pay. Neither are we.

Father was aware that his daughter was considering colleges as expensive or more expensive than Notre Dame. Almost eight months before the December 1994 agreed order was entered, Father received a letter dated April 25, 1994, from Mother about college expenses for Chris and Meghann. In relevant part, that letter provided:

8

And certainly I will not allow Meghann, who will be graduating at the top or close to the top of her class, to be concerned about whether or not you will be paying for her education. <u>If you are limiting her choice of schools based on tuition, this is the time to talk to her so she won't plan on attending a top school.</u> She's already receiving information from colleges because she is such an excellent student. I'm sure she has mentioned some possible choices. I know that I have in the past mentioned <u>schools like Vanderbilt, Georgetown, and Duke</u> to you. (Emphasis added.)

Father was aware that Meghann was visiting some prestigious universities in anticipation of her application and enrollment, including Duke and Georgetown. Father himself took Meghann to visit Vanderbilt University in May of 1996. Vanderbilt's tuition, room and board are slightly more expensive than Notre Dame's. By May 1996, Father knew Meghann had been admitted to Notre Dame. At no time, until August of 1996 (shortly before Meghann was to leave for college) did Father tell his daughter he did not intend to pay for her full room, board, and tuition at Notre Dame.

The trial court found that "the cost of Meghann Hennigan's Notre Dame University room, board, and tuition are reasonable expenses" as contemplated by the earlier agreements and orders. This finding is entitled to a presumption of correctness, and the evidence does not preponderate against it. We affirm the trial court's finding that the room, board, and tuition expenses are reasonable.

IV.

Based on the foregoing, the order of the trial court is affirmed. The costs are taxed to the Appellant. The case is hereby remanded to the trial court for whatever further proceedings that may be necessary.

_____

PATRICIA J. COTTRELL, JUDGE


CONCUR:


_____

BEN H. CANTRELL, PRESIDING
 JUDGE, MIDDLE SECTION



_____

WILLIAM C. KOCH, JR., JUDGE