IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
JULY 9, 2003 Session

# THOMAS G. HYDE, d/b/a MANAGEMENT RECRUITERS OF MURFREESBORO-NASHVILLE v. ISHIKAWA GASKET AMERICA, INC.

### Direct Appeal from the Chancery Court for Rutherford County
### No. 00CV-712     Robert E. Corlew, III, Chancellor

---

### No. M2002-02653-COA-R3-CV - Filed December 22, 2003

---

This case involves the breach of a contract when Defendant refused to pay fees to which Plaintiff claims an entitlement. The trial court below found that, under the facts of the case, the contract did not apply and, therefore, refused to award Plaintiff its fees. Instead, the trial court awarded Plaintiff a lesser amount under the theory of *quantum meruit*. Plaintiff timely appealed that decision and, for the reasons stated below, this Court reverses the ruling of the lower court.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Gary D. Beasley, Murfreesboro, TN, for Appellant

Richard W. Rucker, Murfreesboro, TN, for Appellee

### OPINION

### Facts and Procedural History

In late October or early November of 1999, Shiho Fukui ("Fukui") met and became friends with Nobue Shibusawa ("Shibusawa"), who held a position at Ishikawa Gasket America, Inc. ("Ishikawa"), the defendant. During their conversations, Shibusawa discussed a position at Ishikawa as a translator with Fukui. No interviews were held, and Fukui was not offered and did not take the job because she was uncomfortable working for Shibusawa, her friend.

In December 1999, Ishikawa decided to employ the services of Management Recruiters of Murfreesboro-Nashville ("Recruiters"), an employment agency, to fill a position at its offices in Ohio, and, in that month, Yukari Ishii ("Ishii"), an employee of Recruiters, sent Ishikawa a letter stating the terms of their contract. Ishikawa stated no objections to the terms set out in the letter and Recruiters began searching for and offering candidates to fill the position at Ishikawa. Ishikawa filled the Ohio position through another recruiter but needed to fill another opening at its office in Farmington Hills, Michigan. Ishikawa decided to use Recruiters to find candidates for this position and agreed to the same terms as they were set out in the Ohio position agreement. Ishikawa placed the order to fill the position in Michigan on January 26, 2000. That same day, Ishii sent Ishikawa resumes for two candidates.

Fukui, while searching for a new job, decided to employ the services of Recruiters and sent her resume to their offices. An employee of Recruiters spoke with Fukui about the job opening with Ishikawa without mentioning the company's name, however, Fukui, from the job description and the location, correctly guessed the company's identity. Fukui stated she was uncomfortable with working for a friend of hers. The Recruiters employee ended the conversation and had her supervisor, Ishii, speak with Fukui. On January 27, Ishii spoke with Fukui about sending her resume to Ishikawa for the position in Michigan and persuaded Fukui to apply for the job. In a conversation between Ishii and Shibusawa in early February, Shibusawa rejected Fukui's application stating she did not want to hire a friend to be her assistant. Recruiters sent additional candidate referrals to Ishikawa. However, on February 22, 2000, Shibusawa notified Recruiters that the position had been filled terminating the job order. Ishii and Recruiters later learned that Shibusawa and Ishikawa did, in fact, hire Fukui to fill the position. Fukui had resubmitted an updated resume to Ishikawa and began working on February 28, 2000.

In the contract, Recruiters' fee for referring a candidate that Ishikawa ultimately hired was thirty percent of the candidate's first year compensation including overtime and pay bonuses. Though Fukui did not work a full year, the base salary for her position was $35,000 and her bonus would be a percentage of a week's salary. The contract also states that, if necessary, Recruiters may recover collection fees, including attorney's fees, from Ishikawa to enforce the agreement.

Recruiters, after learning that Fukui filled the position, sent invoices to Ishikawa for a service fee of $12,000 calculated as thirty percent of Fukui's expected first year compensation of $40,000. When Ishikawa refused to pay the invoices, Recruiters filed a complaint on May 19, 2000, to obtain payment of the service fee. Ishikawa specially appeared on August 15, 2000, challenging whether the trial court had subject matter jurisdiction and whether venue was proper but waived this objection by filing an answer on April 9, 2001. A hearing on this matter was held before the Honorable Robert E. Corlew, III on April 17, 2002, and the court held that the contract did not govern the terms of the issue surrounding Fukui. While the court below held that Recruiters was not entitled to a service fee under the contract, it awarded Recruiters a lesser amount under a theory of *quantum meruit*. A final order was entered for this cause on June 17, 2002, and Recruiters timely appealed presenting the following issues for our review:

I.       Whether the trial court erred in holding that no contract existed between appellant and appellee which would entitle appellant to receive the service fee under the contract based on appellee's hiring of a candidate referred by appellant;[1] and

II.      Whether the trial court erred in holding that appellant was not entitled to attorney's fees and other collection costs expended to collect the service fee under the contract.

Appellee raises the following additional issue:

III.     Whether the trial court erred in applying *quantum meruit* to the facts of this case.

For the following reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

## Standard of Review

For a trial court's findings of fact, this Court reviews such findings *de novo* on the record with a presumption of correctness. Tenn. R. App. P. 13(d). However, the interpretation of a written agreement is considered a matter of law and not fact. *APAC-Tenn., Inc. v. J.M. Humphries Constr. Co.*, 732 S.W.2d 601, 604 (Tenn. Ct. App. 1986). Therefore, our review is *de novo* on the record with no presumption of correctness. *Id*.

## Contract Interpretation

In this instance, the argument between the parties centers around the interpretation of the contract terms found in a letter from Recruiters to Ishikawa dated December 1, 1999. Specifically, the contract between the parties provides that a fee is "payable only if a candidate enters into a service relationship with [Ishikawa] or [Ishikawa's] affiliate within one year after [Recruiters'] most recent communication relating to the candidate." The contract further states that the service fee is equal to thirty percent of the candidate's first year compensation. Finally, the contract provides that "[t]he following definitions are applicable to the Agreement: 'Candidate' means a person referred to [Ishikawa] by [Recruiters], directly or indirectly. 'Refer' means the disclosure by [Recruiters] of the identity of a candidate by any means, orally or in writing." In addition, "first year compensation" includes not only salary and wages but also "draw, fees, commissions, bonuses, and incentives."

In general, when this Court is presented with an issue of contract interpretation, we must review the contract and make our own independent determination of the contract's meaning. *Cagle v. Cagle*, No. 02A01-9710-CH-00265, 1998 Tenn. App. LEXIS 776, at *7 (Tenn. Ct. App. Nov. 18, 1993). The rights and obligations of parties to a contract are governed by their written agreement. *Hillsboro Plaza Enters v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). This Court may not make a new contract for parties who have spoken for themselves nor may we later relieve parties of their contractual obligations because they have become burdensome or unwise. *Id*. In addition, we

---

[1]     Appellee suggests, and this Court agrees, this issue should be reworded to ask whether the trial court erred in holding that the terms of the letter contract do not govern the matters in question. In the trial court's memorandum of findings, it fails to state that there was no binding contract between the parties but rather "the terms of this letter [contract] do not govern the matters in question however."

are mindful that, when interpreting language in a contract, we should attribute the usual, natural, and ordinary meaning to such language enforcing the contract according to its plain terms. *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.*, 521 S.W.2d 578, 580 (Tenn. 1975); *Hillsboro Plaza Enterprises*, 860 S.W.2d at 47. "[A contract's] ordinary meaning is that meaning which would have been derived from its words by reasonable persons dealing in the same situation as that of the contracting parties." *Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980) (citing *Hardwick v. Am. Can Co.*, 88 S.W. 797 (Tenn. 1905)).

The trial court below found important that Ishikawa knew of Fukui and that Fukui knew of the position at Ishikawa before Recruiters transmitted her resume to Ishikawa. For this reason, the trial court found, and Ishikawa argues, that Fukui was not a "candidate" that was "referred" by Recruiters as defined in the contract. This finding, however, is inconsistent with the terms of the contract and the evidence at the hearing. In defining "candidate," the contract fails to specify that this excludes persons with whom Ishikawa had already had informal discussions. "Candidate" is defined as a person that is referred to Ishikawa and "refer" means the "disclosure by [Recruiters] of the identity of a candidate by any means, orally or in writing." While Shibusawa was an acquaintance of Fukui and Fukui knew of the position at Ishikawa, the evidence supports the conclusion that, before Recruiters transmitted her resume, Fukui did not apply for the job, she had no interview with Ishikawa, and the job was not offered to Fukui. Both Fukui and Shibusawa testified that they were uncomfortable with the arrangement of Fukui working for Shibusawa as her assistant because they were friends. It was only after Ishii persuaded Fukui to apply for the job that Fukui authorized the transmittal of her resume to Ishikawa. Though Ishikawa knew of Fukui's existence and her bilingual background which qualified her for the position, Fukui's candidacy for the position was not disclosed until Recruiters referred Fukui to Ishikawa, and, therefore, Recruiters is entitled to its service fee. Because we hold that the contract between the parties applies to this case and Recruiters is entitled to its service fee, we reverse the decision of the trial court. In addition, since the trial court found the contract did not apply and awarded Recruiters a sum under the theory of *quantum meruit*, that award by the trial court is improper and reversed.

## Attorney's Fees

The contract between the parties provides that "[i]f collection activities should become necessary, the fee would be adjusted to include any related expenses, such as reasonable attorney's fee." "[W]here an attorney's fee is based upon a contractual agreement expressly providing for a reasonable fee, the award must be based upon the guidelines by which a reasonable fee is determined." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988) (citations omitted). Where the parties to a contract specify that one party shall be liable for "reasonable attorney's fees" rather than an agreed upon amount or percentage of the recovery, the expectation of the parties is that a court will adjudicate the issue of a reasonable fee, unless they agree upon an amount after the controversy matures. *Id.* Because the trial court found the terms of the contract inapplicable, it decreed that plaintiff was not entitled to attorney's fees. Therefore, because we find

-4-

that the provisions of the contract apply to the circumstances of this case, Recruiters has met the burden of showing an entitlement to collection costs, including reasonable attorney's fees. *See Taylor v. T & N Office Equip.*, No. 01A01-9609-CV-00411, 1997 Tenn. App. LEXIS 352, at *11 (Tenn. Ct. App. May 23, 1997). For this reason, we remand this case to the trial court for a proper determination of Recruiters' reasonable attorney's fees.

## Conclusion

For the foregoing reasons, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion. Costs are judged against Appellee, Ishikawa Gasket America, Inc., for which execution may issue, if necessary.

_____

ALAN E. HIGHERS, JUDGE